230 N.J. Super. 593 (1989)
554 A.2d 866
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
THOMAS A. RODGERS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 9, 1989.
Decided February 10, 1989.
*594 Before Judges J.H. COLEMAN, BAIME and D'ANNUNZIO.
Steven Pasternak, argued the cause for defendant-appellant (Greenberg, Margolis, Ziegler, Schwartz, Dratch, Fishman, Franzblau & Falkin, attorneys; Martin L. Greenberg, of counsel; Steven Pasternak, on the brief).
Steven E. Lessick, Deputy Attorney General, argued the cause for plaintiff-respondent (Cary Edwards, Attorney General of New Jersey, attorney; Steven E. Lessick, of counsel and on the brief).
The opinion of the court was delivered by COLEMAN, J.H., P.J.A.D.
The critical issue in this appeal is whether obtaining loans based on falsification of documents and misrepresentation as to the status of liens on real estate pledged as collateral constitutes theft by deception. We answer in the affirmative.
Defendant Thomas A. Rodgers, formerly a practicing attorney in the State of New Jersey, was indicted by a State Grand Jury. Under Indictment No. SGJ171-86-8 defendant was charged with second degree conspiracy, contrary to N.J.S.A. 2C:5-2 (Count One) and 21 counts of second degree theft by deception, contrary to N.J.S.A. 2C:20-4 (Counts Two to Twenty-two). At the end of an eleven-day jury trial, defendant was found guilty on the conspiracy count as well as 15 counts of theft by deception. Six counts (Counts Three through Eight) *595 were dismissed during trial. After merging the conspiracy count with the thefts, the judge sentenced defendant on Counts Two, Nine and Ten to consecutive custodial terms of 10 years with five years of parole ineligibility on each. Defendant was sentenced to concurrent terms on the remaining 12 counts. The aggregate custodial sentence is 30 years with 15 years of parole ineligibility. Violent Crimes Compensation penalties totalling $450 were assessed. Defendant has been denied bail pending this appeal.
In this appeal, defendant contends:
I DISREGARDING (a) N.J.S.A. 2C-20-1f, (b) MODEL JURY CHARGE 2.296, AND (c) DEFENSE COUNSEL'S REPEATED OBJECTIONS AND REQUESTS FOR A PROPER CHARGE, JUDGE FLUHARTY ERRONEOUSLY CHARGED THE JURY ON THE WORD "OBTAINS". THIS PREJUDICIAL ERROR REMOVED AN ELEMENT OF THE OFFENSE FROM THE JURY'S CONSIDERATION AND REQUIRES A REVERSAL ON ALL COUNTS.
II THIS COURT SHOULD DISMISS COUNTS TWO, AND NINE THROUGH TWENTY, BECAUSE THEY FAIL TO CHARGE AN OFFENSE.
III JUDGE FLUHARTY ERRED BY DENYING DEFENSE COUNSEL'S MOTION FOR JUDGEMENT OF ACQUITTAL. THIS ERROR WAS BASED UPON JUDGE FLUHARTY'S MISUNDERSTANDING OF THE OFFENSES CHARGED.
IV JUDGE FLUHARTY ERRED BY DENYING DEFENSE COUNSEL'S MOTION TO CHARGE LESSER INCLUDED OFFENSES OF N.J.S.A. 2C:20-4.
V JUDGE FLUHARTY DIRECTED A VERDICT BY PRECLUDING MR. RODGERS FROM PRESENTING EVIDENCE IN HIS DEFENSE.
VI THE ERROR SET FORTH IN POINT V WAS EXACERBATED BY THE VERDICT SHEET IMPROPERLY SETTING FORTH THE AMOUNT OF THE ORIGINAL LOANS.
VII JUDGE FLUHARTY PREJUDICED THE JURY BY CHARGING IT THAT HE WAS DISMISSING SEVERAL COUNTS BECAUSE THE WITNESS WAS NOT PRESENT TO PRESENT THE EVIDENCE THAT WOULD ESTABLISH GUILT.
VIII THE NUMEROUS ERRORS OF THE TRIAL COURT CUMULATIVELY REQUIRE A REVERSAL OF MR. RODGERS' CONVICTIONS.
IX ASSUMING ARGUENDO THAT THE CONVICTIONS ARE NOT REVERSED, THIS COURT SHOULD VACATE THE SENTENCE BECAUSE THE IMPOSITION OF THREE CONSECUTIVE MAXIMUM SENTENCES VIOLATES YARBOUGH AND ROTH AND IS CLEARLY EXCESSIVE.
A. The Sentence Imposed Violates Yarbough.

*596 B. The Sentence Imposed Violates Roth.

C. Point Summary.

I
Based on the evidence presented during the trial, the jury could have determined that defendant was guilty based on the following facts. Generally, the victims of the thefts can be broken down into six categories: six were banks (Counts Nine, Eleven, Twelve, Thirteen, Fourteen and Fifteen), four were Savings and Loans (Counts Ten, Sixteen, Seventeen and Nineteen), one was a finance company (Count Twenty), one was a mortgage service company (Count Eighteen), one was a small business investment company (Count Two), and two were individual home buyers.
Defendant was an attorney who owned many parcels of real estate between July 19, 1982 and October 2, 1984. He also owned Equity Title and Abstract Co., T.A. Rodgers Construction Corporation, Ruggles Development Corporation and Harbor Wharf, Inc. Defendant developed his real estate through these corporate entities. He financed his real estate development substantially through commercial loans. He ran into financial problems, however, when interest rates started to rise and the sales of completed units declined. In the wake of a financial pinch, defendant arranged to have his title abstract company prepare false title reports that encouraged lending institutions to loan him money based on the belief that the properties were free of prior liens or that existing liens would be cancelled at the time of settlement. In fact, those properties were encumbered by undisclosed prior liens or by prior liens that were disclosed but marked removed at title closing when in truth they had not been removed. In addition, defendant misrepresented to some lenders that property used as collateral was owned by him when it was not.
In order to have Equity Title and Abstract Co. prepare the title reports on the properties, defendant concealed his interest in and involvement with this company from the lenders. Daryle *597 Feistman, an unindicted coconspirator and an employee of one of defendant's companies, represented the title abstract company and served as settlement clerk at closings. Feistman also prepared false commitments at defendant's direction and sent them to the lenders. Although a report of title and a commitment for title insurance from either Lawyers Title Company or Safeco Title Insurance Company were prepared in each case, usually no search was done and the title reports were false.
A title search was conducted in a few cases. In a few other cases where the lender was otherwise aware that there were outstanding liens on the properties being used as collateral, defendant represented that the prior liens would be discharged. At the closing Feistman would represent that the liens were removed; however, she would retain checks from the lenders which were supposed to be used to satisfy the prior liens. Feistman deposited the checks in the Equity Title and Abstract Co.'s Trust Account, but instead of paying the prior loans as represented, she disbursed the money to defendant's various checking accounts.
Four of the thefts by deception occurred between July 1982 and April 1983. Defendant's first fraudulent loan was obtained from the First National Bank of Toms River (Count Nine) in the amount of $250,000. The loan agreement was dated July 9, 1982. Because defendant prepaid the interest, he actually received $202,500. William Hadley, a senior vice-president at the bank, testified that the loan was secured by liens on five parcels of real estate on Long Beach Island. The bank's commitment letter indicated that it required no worse than second liens on the properties. Defendant produced an affidavit of title indicating only one prior lien encumbered each parcel. Attached to defendant's affidavit was a letter from the Equity Title and Abstract Co. purporting to confirm defendant's representations. In truth, the properties were encumbered by two prior liens: one for $500,000 granted to Bennett Levin in March 1982 and the other for $1,000,000 granted to the *598 Summit Elizabeth Trust Company in May 1982. Hadley testified that the bank would not have made the loans if it had known these facts.
On February 28, 1983 defendant arranged and co-signed a mortgage loan from First Federal Savings and Loan Association to himself and another party. The loan, in the sum of $232,000, was secured by a lien on defendant's property at 120 East Connecticut Street, Surf City. Based on a title report supplied by defendant's title abstract company and defendant's affidavit of title, the bank expected to obtain a first lien on the property. Even though the bank was aware of a mortgage held by Ralph D. and Mary V. Palumbo, defendant was to have discharged that lien at the settlement. This property, however, was also encumbered by liens held by Bennett Levin, the Summit Elizabeth Trust Company, and the First National Bank of Toms River. The prior liens were not cancelled and thus the bank did not obtain the first lien it was promised.
Also on February 28, 1983, First Federal and William Walsh entered into a mortgage agreement whereby Walsh received $192,000 to purchase 103 North First Street, Surf City, from defendant. The bank was given a lien on the premises. Thereafter, Walsh reconveyed the property to defendant without discharging the lien. Defendant conveyed the property to Karen S. Milligan on December 22, 1983 without cancelling First Federal's existing lien (Count Twenty-two).
On April 5, 1983 defendant obtained a loan from First Financial for $192,000 (Count Eighteen). Defendant used 145 East Maryland Street, Long Beach Township as collateral. First Financial relied on defendant's affidavit and the title report in granting the loan. It was to have obtained a first lien. The title report indicated that Richard W. and Verna Betts held a mortgage which was to have been paid off at the settlement with the loan proceeds. The Betts' mortgage was not paid at the closing. Additionally, the First National Bank of Toms River owned an undisclosed mortgage on the property.
*599 The jury heard additional evidence concerning loans made to defendant by (1) Nassau Savings and Loan Association for $1,933,844.27 and $7,000,000 (Counts Sixteen and Nineteen); (2) Guarantee Bank for $280,000, $200,000 and $250,000 (Counts Fifteen, Twelve and Eleven); (3) First Jersey National Bank/South for $250,000 (Count Fourteen); (4) Bankers Trust Company for $2,000,000 (Count Thirteen); (5) Jersey Shore Savings and Loan for $1,250,000 (Count Ten); and (6) Globe Mortgage Company, also known as Small Business Investment Corp. for $750,000 (Count Two). Finally, a second purchaser bought a home from defendant without defendant cancelling prior liens. The amount involved was $184,493.43 (Count Twenty-one). The purchasers involved in Counts Twenty-one and Twenty-two relied on false documents supplied by defendant which indicated no outstanding liens. The evidence revealed that defendant engaged in the same criminal scheme on each count. At trial, defendant acknowledged that he knew the documents were false at the time and that he submitted them to the lenders and purchasers with the knowledge that they would rely on them in deciding whether to transact business with him.
Still further, defendant altered a partial release of mortgaged property prepared by the First National Bank of Toms River to show that several properties had been released from coverage under the bank's mortgage when in fact only one property had actually been released by the bank. This fraudulent release was then used to induce other lenders to believe that the prior mortgage had been paid. Defendant recorded this false release to the detriment of the Toms River Bank.
Finally, defendant prepared false agreements of sale for properties. These agreements were purported to be worth over $600,000. They were assigned to Bankers Trust as collateral and as an inducement for a $2,000,000 loan.

II
We have considered the contentions raised and the arguments advanced in support of them. We find they are clearly without *600 merit and deserve no further comment except as indicated below respecting point headings IV and IX, A. See R. 2:11-3e(2).
Defendant contends that he is not guilty of theft by deception because he did not obtain property of another and that the trial judge should have charged the jury on lesser included offenses of fraud related to public records and recordable instruments, N.J.S.A. 2C:21-3, and falsifying records, N.J.S.A. 2C:21-4. Defendant contends that because the lenders made loans to him, there was no theft. We disagree with these contentions.
N.J.S.A. 2C:20-4 defines theft by deception. It provides that:
A person is guilty of theft if he purposely obtains property of another by deception. A person deceives if he purposely:
a. Creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise;
b. Prevents another from acquiring information which would affect his judgment of a transaction; or
c. Fails to correct a false impression which the deceiver previously created or reinforced, or which the deceiver knows to be influencing another to whom he stands in a fiduciary or confidential relationship.
The term "deceive" does not, however, include falsity as to matters having no pecuniary significance, or puffing or exaggeration by statements unlikely to deceive ordinary persons in the group addressed.
The operative words in the statute are "purposely obtains property of another by deception." A person acts
purposely with respect to the nature of his conduct or a result thereof if it is his conscious object to engage in conduct of that nature or to cause such a result. A person acts purposely with respect to attendant circumstances if he is aware of the existence of such circumstances or he believes or hopes that they exist. "With purpose," "designed," "with design" or equivalent terms have the same meanings. [N.J.S.A. 2C:2-2b(1)]
The words "obtain," "property," "property of another" and "interest in property" were defined in N.J.S.A. 2C:20-1 at the time of these offenses as follows:
f. "Obtain" means: (1) in relation to property, to bring about a transfer or purported transfer of a legal interest in the property, whether to the obtainer or another; or (2) in relation to labor or service, to secure performance thereof.

*601 g. "Property" means anything of value, including real estate, tangible and intangible personal property, trade secrets, contract rights, choses-in-action and other interests in or claims to wealth, admission or transportation tickets, captured or domestic animals, food and drink, electric, gas, steam or other power.
h. "Property of another" includes property in which any person other than the actor has an interest which the actor is not privileged to infringe, regardless of the fact that the actor also has an interest in the property and regardless of the fact that the other person might be precluded from civil recovery because the property was used in an unlawful transaction or was subject to forfeiture as contraband. Property in possession of the actor shall not be seemed property of another who has only a security interest therein, even if legal title is in the creditor pursuant to a conditional sales contract or other security agreement.
* * * * * * * *
o. "Interest in property which has been stolen" means title or right of possession to such property.
Consequently, theft by deception "occurs where one obtains the property of another by purposely creating a false impression." State v. Talley, 184 N.J. Super. 167, 169 (App. Div. 1982), reversed on other grounds, 94 N.J. 385, 388 (1983). By creating a false impression, the theft involves a taking by fraudulent means. The commentary to the Code states:
It is the falsity of the impression purposely created or reinforced, rather than of any particular representation made by the actor, which is determinative. Thus, it is possible to deceive by statements which are literally true. Deception includes half truths, i.e., statements which are literally true, but misleading because of the omission of necessary qualifications. [Final Report of the New Jersey Criminal Law Revision Commission, Vol. II: Commentary (1971) § 2C:20-4 at 224; hereinafter Final Report, Vol. II, Commentary]
We are therefore completely satisfied that defendant committed theft by deception. He fraudulently induced lenders to transfer money to him in the form of loans based on the false impressions which he purposefully created. His falsification of documents and express misrepresentations were part of the scheme to create and reinforce the false impressions. While the State was obligated to establish that the property transferred by the lenders had a pecuniary value, it was not required to establish that defendant benefited financially from the fraudulent transfers of the property interests. Clearly, the millions of dollars transferred to defendant involved a transfer of an *602 interest in property within the meaning of N.J.S.A. 2C:20-1(o) which had substantial pecuniary value.
Similarly, defendant's contention that his conduct was not violative of N.J.S.A. 2C:20-4 because the legislature did not enact subsection d of the proposed Code is also without merit. That proposed subsection provided that a person deceives if he:
fails to disclose a known lien, adverse claim or other legal impediment to the enjoyment of property which he transfers or encumbers in consideration for the property obtained, whether such impediment is or is not valid, or is or is not a matter of official record.
The Commentary to the Code provides that generally the Code does not require affirmative disclosure. It identifies three exceptions, two of which became N.J.S.A. 2C:20-4(b) and (c). A third was the proposed subsection (d). The Commentary provides that affirmative disclosure was not required "primarily because the borderline between desirable and disapproved behavior in this area is so ill-defined in our society that criminal sanctions are likely to impinge on some conduct well within the bounds of approved commercial activity." Final Report, Vol. II, Commentary § 2C:20-4 at 225. Hence, Cannel, Title 2C, Comments, p. 364 (1989) states "The Legislature rejected this provision (§ d) as having a significant and unwanted effect on commercial and real estate transactions."
But the failure to enact § (d) has no bearing on this case. By not enacting that subsection, the Legislature decided not to criminalize the failure to disclose liens. That proposed subsection did not touch upon a person's affirmative falsification of documents and misrepresentation respecting liens in a fraudulent scheme to induce a lender to transfer a property right. The proposed § (d) would not have required defendant to affirmatively state whether there were liens, but when asked, as the lenders did in this case before transferring money to defendant, he was obligated by N.J.S.A. 2C:20-4a to speak the truth to avoid creating or reenforcing a false impression as to the value of his properties.
*603 We are also persuaded that fraud related to public records and recordable instruments, N.J.S.A. 2C:21-3 and falsification of records, N.J.S.A. 2C:21-4, are not lesser offenses included in the theft by deception involved here. Neither of those offenses requires proof of theft or transfer of property or a property right as an element of the offense. As we mentioned previously, defendant admitted during trial that the lenders made loans to him. In doing so, they transferred a property right to him. Under N.J.S.A. 2C:1-8(d) an included offense is one which "is established by proof of the same or less than all the facts required to establish the commission of the offense charged." Because defendant admitted receiving the loan proceeds from the lenders, there was no rational basis in the evidence to charge the alleged lesser offenses. See N.J.S.A. 2C:1-8(e); State v. Grunow, 102 N.J. 133, 148 (1986); State v. Saulnier, 63 N.J. 199, 106-07 (1973). Furthermore, given the content of the indictment, it cannot be said that the grand jury considered the alleged lesser offenses. State v. Talley, supra, 94 N.J. at 390-394; State v. Wein, 80 N.J. 491, 497 (1979).

III
Finally, defendant argues that his three consecutive sentences violate State v. Yarbough, 100 N.J. 627 (1985), cert. den. 475 U.S. 1014, 106 S.Ct. 1193, 89 L.Ed.2d 308 (1986) and are otherwise excessive. Yarbough teaches that ordinarily there should be an overall outer limit of two consecutive sentences where multiple offenses are involved. Id. 100 N.J. at 645.
The trial court relied on the following language of Yarbough to justify the imposition of three consecutive 10-year terms: "We recognize that even within the general parameters that we have announced there are cases so extreme and so extraordinary that deviation from the guidelines may be called for." 100 *604 N.J. at 647. The trial court found this case to be within the Yarbough exception. We disagree.
Deviations from Yarbough have involved more offensive conduct than that presented in this case. See, e.g., State v. Lewis, 223 N.J. Super. 145, 153-54 (App.Div. 1988), certif. den. 111 N.J. 584 (1988) (50 years for conviction of first degree aggravated manslaughter, second degree aggravated arson, six counts of second degree aggravated assault and one count of second degree burglary); State v. Day, 216 N.J. Super. 33, 38 (App.Div.), certif. den. 107 N.J. 640 (1987), (49 years for five counts of first degree sexual assault and six counts of second degree aggravated assault). We believe the Yarbough exception should be limited to more extraordinary cases. See State v. Moore, 113 N.J. 239, 309-310 (1988); State v. Gerald, 113 N.J. 40, 122-123 (1988); State v. Zola, 112 N.J. 384, 435-436 (1988). Even though defendant's conduct as an attorney is reprehensible because he stole millions of dollars, there has been some restitution made from his assets. See N.J.S.A. 2C:44-1b(6). While restitution is irrelevant to the issue of guilt and unprofessional conduct, In re Wilson, 81 N.J. 451, 457-458 (1979), it is a relevant consideration in sentencing. We are therefore satisfied from the totality of the circumstances that this case is not so extreme and so extraordinary as to require a deviation from Yarbough's limit of 20 years with 10 years of parole ineligibility.
We therefore reduce the aggregate custodial sentence to 20 years with 10 years of parole ineligibility. In all other respects, the sentences fully comply with the guidelines established in State v. Roth, 95 N.J. 334 (1984) and State v. Hodge, 95 N.J. 369 (1984).
As modified, the judgment of conviction is affirmed. The matter is remanded to the Law Division to resentence defendant to a concurrent term on either Count Nine or Ten, and to file an amended judgment.
MODIFIED AND AFFIRMED.