574 A.2d 1006

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
CHARLES KARL KRUEGER,
DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued May 2, 1990—Decided May 24, 1990.

Before Judges KING, BAIME and KEEFE.

*Charles Novins,* Assistant Deputy Public Defender, argued the cause for appellant (*Wilfredo Caraballo,* Public Defender, attorney; *Clare M. Pessolano,* Assistant Public Defender, of counsel and on the brief).

*Robin Parker*, Deputy Attorney General, argued the cause for respondent (*Robert J. Del Tufo*, Attorney General, attorney; *Robin Parker* of counsel and on the letter-brief).

The opinion of the court was delivered by

BAIME, J.A.D.

The Atlantic County Grand Jury returned an indictment charging defendant Charles Krueger with eight counts of third degree theft by deception (*N.J.S.A.* 2C:20–4). The gist of the charges was that defendant, using several aliases, defrauded various casinos by obtaining gambling chips under false pretenses. Pursuant to an agreement with the State, defendant entered a *retraxit* plea of guilty to one of the eight counts. The Law Division judge placed defendant on probation for five years, imposed a fine of $2,500, and ordered him to pay restitution in the amount of $7,000. The restitution order directed defendant to make reparation for the entire amount allegedly stolen. This sum includes restitution on the seven remaining counts, which were dismissed pursuant to the State's recommendation. In addition, the Law Division judge ordered, as a condition of probation, that defendant be forever barred from entering any casino hotel in Atlantic City. Although other issues are raised in this appeal, defendant's principal arguments are that (1) absent an adequate factual basis, a sentencing court may not order restitution with respect to counts that are not the subject of a guilty plea and which are ultimately dismissed, and (2) a condition of probation banning entry into a casino hotel is not statutorily authorized and is repugnant to the Eighth Amendment.

I.

We need not recount the facts at length. Unfortunately, the record is somewhat sparse. We gather from the plea transcript that defendant at some point stole various United States savings bonds and after redeeming them, deposited the monies

garnered from this earlier crime in various bank accounts under the name of the actual owner, Robert Rogers. Representing himself to be Robert Rogers, defendant entered Harrah's Hotel and executed a "marker," thereby receiving gambling chips as a consequence. According to defendant's statement at the time of the plea, the stolen monies deposited in the bank accounts were sufficient, he believed, to cover the "marker." However, after learning of the earlier theft of the bonds, the United States Secret Service confiscated the funds defendant had deposited in the bank accounts. The "marker" was dishonored because of insufficient funds.

While we understand that defendant utilized essentially the same *modus operandi* in obtaining chips from other casinos, the plea transcript is entirely silent with respect to these illegal transactions. Although defendant freely acknowledged that he misrepresented his identity in signing the "marker" and purchasing gambling chips from Harrah's Hotel, the record is wholly barren of any statement by the defendant, confessing his guilt of the offenses charged in the other seven counts of the indictment. We also note that although the Law Division judge otherwise meticulously adhered to the exacting requirements of *R.* 3:9–2 in accepting defendant's plea, no mention was made of the possibility that restitution would be ordered. While in the standard plea form defendant acknowledged that he might be required to pay restitution, he was never questioned or otherwise apprised of the subject on the record.

At the sentencing proceedings, the Law Division judge, among other aspects of the sentence, ordered defendant to make restitution in an amount not to exceed $9,000. Although the transcript is not altogether clear, it appears that this sum was predicated upon information contained in the presentence report. Included in this sum were amounts encompassed in the illegal transactions alleged in the remaining seven counts of the indictment. Although defendant never protested his guilt of those charges, his attorney vigorously objected on the basis that "there are no other casinos that are owed that kind of

money." Based on counsel's request, the Law Division judge scheduled a hearing to determine the amount of restitution.

Unfortunately, the meager record is not entirely informative with respect to what occurred thereafter. Apparently, defendant filed three separate motions, seeking to (1) withdraw his plea of guilty, (2) vacate the fine, and (3) fix the amount of restitution. Because defendant failed to appear in a timely fashion at the scheduled hearing, the Law Division judge summarily dismissed his motions to withdraw his plea and vacate the fine. Based upon documents which have not been made part of the record, the judge ordered that restitution be made to the various casinos in amounts totaling $7,000. This appeal followed.

## II.

Preliminarily, we address an issue that was not presented in defendant's brief but was raised in the course of defense counsel's oral argument on appeal. Specifically, defendant for the first time claims that his *retraxit* plea of guilty was not supported by an adequate factual basis. In support of his contention, defendant points to a portion of his statement made at the time of his plea that when he signed the "marker" he believed there were sufficient funds in the bank account to cover the item. Defendant thus asserts that he lacked the requisite criminal mental state and the Law Division judge should have rejected his plea *sua sponte.*

We find no merit in this contention. Theft by deception "occurs where one obtains the property of another by purposely creating a false impression." *State v. Talley,* 184 *N.J.Super.* 167, 169, 445 *A.*2d 446 (App.Div.1982), rev'd on other grounds 94 *N.J.* 385, 388, 466 *A.*2d 78 (1983). *See also N.J.S.A.* 2C:20–4. In that context, it can be said that defendant induced Harrah's Hotel to give him gambling chips based on the false impression that he was Robert Rogers. That defendant believed there were sufficient funds in the bank account to

ultimately cover the "marker" cannot reasonably serve to exculpate him.

A somewhat similar argument was considered by us in *State v. Rodgers*, 230 *N.J.Super.* 593, 554 *A.*2d 866 (App.Div.1989). There, defendant obtained loans by falsifying documents, thereby misrepresenting the status of liens on real estate pledged as collateral. At trial, defendant contended that he fully intended to repay the loans, but developed financial problems when interest rates started to rise. *Id.* at 596, 554 *A.*2d 866. We nevertheless held that defendant committed theft by deception when he obtained the moneys in the form of loans based on the false impressions which he purposely created. *Id.* at 601, 554 *A.*2d 866.

Here, defendant's false representation as to his identity was part and parcel of a scheme to use stolen funds. By opening a bank account in another's name, defendant was able to conceal his connection with stolen monies. Then, by concealing his true identity, defendant was able to induce Harrah's Hotel to provide him with gambling chips. As in *State v. Rodgers*, the fact that defendant believed Harrah's Hotel would ultimately be paid through the stolen monies in the bank account cannot exonerate him.

■ We are equally unpersuaded by defendant's argument that there was no proof offered at the plea hearing Harrah's Hotel relied upon his false identity when it accepted his "marker" and gave him gambling chips. To be sure, the paltry record is generally uninformative with respect to whether, as defendant claims, Harrah's Hotel would have given him the gambling chips had he revealed his true identity. Of course, we recognize and are sensitive to the requirement that there be an adequate factual basis for a plea of criminal guilt. *See State v. Smullen*, 118 *N.J.* 408, 416–417, 571 *A.*2d 1305 (1990) (slip opinion at 9–10); *State v. Barboza*, 115 *N.J.* 415, 422, 558 *A.*2d 1303 (1989); *State v. Stefanelli*, 78 *N.J.* 418, 439, 396 *A.*2d 1105 (1979). "In New Jersey, except in capital cases, the trial court

must 'be satisfied from the lips of the defendant that he committed the acts which constitute the crime.'" *State v. Barboza*, 115 *N.J.* at 422, 558 *A.*2d 1303, quoting *State v. Stefanelli*, 78 *N.J.* at 439, 396 *A.*2d 1105 (Schreiber, J., concurring). So too, our Rules of Court require that the court must satisfy itself "there is a factual basis for the plea...." *R.* 3:9–2. This much conceded, defendant's claim that Harrah's Hotel would have accepted his "marker" had he revealed his true identity is highly speculative and is nowhere supported in the record. We will not reverse on the basis of such conjecture.

### III.

■ We next consider defendant's argument that the Law Division judge erred by ordering him to make restitution on counts to which he neither pleaded guilty nor acknowledged his commission of the crimes therein alleged. We agree.

The applicable principles are set forth in *State v. Bausch*, 83 *N.J.* 425, 416 *A.*2d 833 (1980). There, the defendant pleaded guilty to the pre-Code offenses of entry with intent to steal and larceny. As part of the plea agreement, the State promised to recommend for dismissal the third count of the indictment, charging the defendant with embezzlement. At the time of sentencing, the trial court ordered the defendant to make restitution to the victim of the embezzlement for one-half of the loss incurred.

The Supreme Court held that the restitution order improperly included the loss covered in the embezzlement count. *Id.* at 437, 416 *A.*2d 833. In deciding the question, the Court noted that *N.J.S.A.* 2A:168–2 authorized "reparation or restitution to the aggrieved parties for the damages or loss caused by [the defendant's] offense...." *Id.* at 431, 416 *A.*2d 833. In construing this phrase, the Court stated that "[t]he only offense to which the statute refers is the [crime] for which defendant was convicted." *Ibid.* The Court also observed that "[t]he central purpose of restitution in the probation context is rehabilita-

tion." *Id.* at 434, 416 *A*.2d 833. It was said that "[t]he defendant is made to understand ... his wrongful conduct has caused damage to a victim and, in a broader sense, to society." *Ibid.* "Restitution related to the character or nature of the criminal offense of which defendant has been convicted [is thus intended] to instill a sense of responsibility for and an awareness of damage resulting from wrongful conduct." *Ibid.* In light of this objective, the Court stated that a judge may not ordinarily "punish a defendant for an offense for which he has not been convicted or pleaded guilty." *Ibid.*

Significantly, in light of the issue raised by this appeal, the Court did not completely preclude conditioning probation on restitution for crimes encompassed in counts other than that to which the defendant has pleaded guilty. *Id.* at 435–436, 416 *A*.2d 833. Noting that a judge is not required to "wear blinders" in imposing sentence, *see State v. Marzolf*, 79 *N.J.* 167, 185, 398 *A*.2d 849 (1979), the Court alluded to the recognized principle that, "[i]n connection with a plea bargain[,] facts underlying a count which has been dismissed may be considered" in fixing the appropriate penalty. 83 *N.J.* at 435, 416 *A*.2d 833. The Court added, however, that such facts may not serve as a basis for restitution unless two additional conditions are satisfied. "First, there should be a relationship between the restitution and the goal of rehabilitation with respect to the offense for which the defendant is being sentenced. Second, there must be an adequate factual basis supportive of the restitution." *Ibid.* When these additional requisites are satisfied, the judiciary's "inherent power" to suspend sentences and fix remedies was said to permit ordering restitution on counts other than those to which the defendant has pleaded guilty. *Id.* at 433, 416 *A*.2d 833.

█ Although the Court in *Bausch* was concerned with offenses committed prior to the enactment of the Code of Criminal Justice (*N.J.S.A.* 2C:1–1 to :98–4), and with the predecessor statute to *N.J.S.A.* 2C:45–1, the same principles nonetheless

apply here. *N.J.S.A.* 2C:45–1b(8) permits a court to order a defendant "[t]o make restitution of the fruits of his offense...." This statutory language apparently refers to the offense for which the defendant has been convicted. *State v. Bausch,* 83 *N.J.* at 433, 416 *A.*2d 833. However, the Code has retained flexibility in determining appropriate conditions of probation by empowering a court "to compel a defendant '[t]o satisfy any other conditions reasonably related to [his] rehabilitation ... and not unduly restrictive of his liberty or incompatible with his freedom of conscience.' " *State v. Bausch,* 83 *N.J.* at 433, 416 *A.*2d 833; *see also N.J.S.A.* 2C:45–1b(12). It is abundantly plain that this provision authorizes a sentencing court to order restitution on crimes alleged in counts to which a defendant has not pleaded guilty as long as (1) there is a reasonable relationship between the restitution and the defendant's rehabilitation, and (2) there is a factual underpinning supportive of the restitution. *Id.* at 433–436, 416 *A.*2d 833.

Against that backdrop, we are convinced that the order directing defendant to make restitution to other casinos for losses incurred by reason of the illegal transactions alleged in the seven counts of the indictment which were dismissed by the court was reasonably related to the goal of rehabilitation. According to the indictment, defendant utilized the same *modus operandi* in committing all of the offenses. By requiring full reparation, the message is that defendant's criminal behavior resulted in damage to others. Moreover, restitution carries with it the sting of punishment and this punitive aspect may reasonably be said to serve a rehabilitative purpose by deterring future misconduct. We note in this respect that the doubts that may beset the deterrent effect of punishment when the crime is steeped in emotional pressures recede sharply when, as here, the motivation is purely pecuniary and the criminal event is part of a calculated "business" venture. *See State v. Ivan,* 33 *N.J.* 197, 202, 162 *A.*2d 851 (1960).

While we find a reasonable nexus between the order of restitution and the objective of rehabilitation, our review of the

record fails to reveal a factual basis supportive of defendant's guilt of the offenses alleged in the dismissed counts. Unfortunately, *State v. Bausch* is unclear with respect to at what point in the criminal proceedings a factual basis supportive of the restitution must be given. At one point in the Court's opinion, reference is made to the presentence report. 83 *N.J.* at 436, 416 *A.*2d 833. Specifically, the Court stated that "the factual basis will probably be found in the presentence report" and the "defendant is entitled to notice and a hearing" where "[h]e may refute the statements [contained therein] and present relevant material...." *Ibid.* Citing this reference, the State contends that the presentence report and documents submitted to the Law Division judge established the factual underpinnings for restitution on the dismissed counts. However, it appears that the Court in referring to a summary hearing and the presentence report was describing procedures to be utilized in determining "the amount due the victim" and "the defendant's ability to pay." *Id.* at 435, 416 *A.*2d 833. Elsewhere in the Court's opinion, *R.* 3:9–2 is cited and it is said that the "defendant cannot be obligated to make restitution [on counts to which he has not pleaded guilty] unless he ha[s] voluntarily, with an understanding of what he is being asked to state, described a factual basis for liability." *Id.* at 436, 416 *A.*2d 833.

▇ We read *Bausch* as requiring that the factual basis for restitution be established at the time of the plea. The defendant must satisfy the court that he is aware that he has victimized the would-be recipient of the proposed payments. The defendant should be advised on the record that he may be ordered to make restitution on counts to which he does not plead guilty. We recognize that, as a general rule, "there is no infringement on [a] defendant's constitutional rights for failing to comment on restitution at a plea proceeding." *State v. Rhoda,* 206 *N.J.Super.* 584, 596, 503 *A.*2d 364 (App.Div.1986). Generally, negation of restitution cannot fairly be implied, and there is ordinarily no reason that a defendant can expect to be able to retain the fruits or benefits of his illegal activities "to

the further detriment of the victims of the crimes." *Ibid.* However, where it is anticipated that restitution might be ordered for crimes encompassed in indictments or counts which under a plea agreement are later to be dismissed, the defendant should be alerted to that fact and should be required to provide a factual basis supportive of restitution. *Cf. State v. Saperstein,* 202 *N.J.Super.* 478, 482–483, 495 *A.*2d 454 (App.Div. 1985).

These standards were not adhered to in this case. As we pointed out previously, no reference to restitution was made on the record at the entry of the plea, although the possible fines, custodial sentences and penalties were meticulously explained to defendant. Defendant could reasonably have believed that pursuant to the plea agreement and the dismissal of seven counts of the indictment he would not be required to make restitution with respect to those offenses. The plea transcript is entirely silent with regard to a factual basis supportive of restitution on the dismissed counts. On this record, we find unavoidable the conclusion that the restitution obligation was beyond defendant's reasonable anticipation.

One possible remedy is to vacate the plea. *See State v. Kovack,* 91 *N.J.* 476, 453 *A.*2d 521 (1982). However, the Attorney General has requested us to mold the restitution order to include only the $1,000 taken from Harrah's Hotel in the event we reject his argument that full reparation was proper. In our view, this approach fully vindicates defendant's rights and represents a sensible accommodation of the interests of the State.

## IV.

Defendant's final contention is that a sentencing court may not exclude a defendant from casino hotels as a condition of probation. Defendant's argument is two-fold. He first asserts that such a debarment is violative of the Eighth Amendment's proscription against cruel and unusual punishment, as

made applicable to the states through the Fourteenth Amendment. *See Robinson v. California*, 370 *U.S.* 660, 666, 82 *S.Ct.* 1417, 1420, 8 *L.Ed.*2d 758, 763 (1962). Subsumed in this argument is the claim that the condition of probation is cruel and unusual under Article I, paragraph 12, of our Constitution. Second, defendant argues that only the Casino Control Commission has the power to bar individuals from casino hotels.

Before we turn to these contentions, we note that the State, while asserting that the debarment ordered by the Law Division was entirely appropriate, asks us to modify the condition to make it coextensive with the period of probation. We perceive no sound reason to reject this course. Accordingly, we exercise our original jurisdiction pursuant to *R.* 2:10–5 and reduce the period of exclusion to five years. We consider defendant's arguments in the context of the order as modified.

We are entirely unpersuaded by defendant's constitutional claims. It is enough to say that we find nothing cruel and unusual in an order barring a defendant from entering a casino hotel after he has pleaded guilty or has been convicted after trial of a casino related crime. In our view, the punishment conforms with contemporary standards of decency, is not grossly disproportionate to the offense and is reasonably related to a legitimate penological objective. *See Gregg v. Georgia*, 428 *U.S.* 153, 173, 96 *S.Ct.* 2909, 2925, 49 *L.Ed.*2d 859, 874 (1976); *State v. Ramseur*, 106 *N.J.* 123, 169, 524 *A.*2d 188 (1987); *State v. Des Marets*, 92 *N.J.* 62, 82, 455 *A.*2d 1074 (1983); *State v. Hampton*, 61 *N.J.* 250, 273–274, 294 *A.*2d 23 (1972).

More troublesome is defendant's contention that the debarment is not statutorily authorized. We recognize that exclusion of a defendant from casino hotels is not one of the conditions of probation expressly authorized by *N.J.S.A.* 2C:45–1b(1) through (13). We also acknowledge that several panels of our court have apparently doubted the "relation between a bar to [a] defendant's entering a casino hotel and the rehabilitative

purposes of probation" and have vacated probationary conditions similar to that we consider here.[1]

We harbor no similar misgivings. In the context of the facts of this case, we are thoroughly convinced that the exclusion from casino hotels was "reasonably related to the rehabilitation of the defendant and [was] not unduly restrictive of his liberty or incompatible with his freedom of conscience." *N.J.S.A.* 2C:45–1b(12). The probationary condition fell within the statutory authorization provided by *N.J.S.A.* 2C:45–1b(12). Moreover, we are entirely satisfied that the debarment was reasonably designed to "assist" defendant in "lead[ing] a law-abiding life" and was thus permitted under *N.J.S.A.* 2C:45–1a. As for the rehabilitative purpose of *N.J.S.A.* 2C:45–1, we need say only that the crime committed was casino related and that defendant admitted in the presentence report he was a "compulsive gambler." The condition of probation was substantially related to an appropriate penological and rehabilitative objective. *See State v. Reyes,* 207 *N.J.Super.* 126, 140–141, 504 *A.*2d 43 (App.Div.1986), certif. den. 103 *N.J.* 499, 511 *A.*2d 671 (1986); *State in Interest of J.A.B.,* 175 *N.J.Super.* 396, 399, 418 *A.*2d 1317 (App.Div.1980); *see also State v. Maglio,* 189 *N.J.Super.* 257, 263, 459 *A.*2d 1209 (Law Div.1983); *State v. Bollinger,* 169 *N.J.Super.* 553, 562–563, 405 *A.*2d 432 (Law Div.1979).

Wholly apart from the statutory authorization we have cited is the inherent power of the courts to fashion remedies in the realm of criminal justice. *See State v. Carter,* 64 *N.J.* 382, 392, 316 *A.*2d 449 (1974). "Probation has a deep-rooted common law basis." *Ibid.* "New Jersey courts could and did impose terms

---

[1]*State v. Sample* (A–1772–88T4) (App.Div. Nov. 30, 1989) (slip opinion at 3); *see also State v. Whitefield* (A–4388–87T4) (App.Div. March 30, 1990) (slip opinion at 6–7). In citing these unpublished decisions, we depart from the admonition of *R.* 1:36–3. However, we do not cite these opinions as authority. We cite them merely to place the issue presented in its historical perspective. *See Falcon v. American Cyanamid,* 221 *N.J.Super.* 252, 261 n. 2, 534 *A.*2d 403 (App.Div.1987). *See also Pressler, Current N.J. Court Rules,* Comment *R.* 1:36–3.

and conditions accompanying the suspension of sentence ... prior to the enactment of the first act relating to probation, *L. 1900, c.* 102." *State v. Bausch,* 83 *N.J.* at 432, 416 *A.*2d 833. While the judiciary has no power to create a penalty for a statutory crime where none exists, or to mete out a punishment in excess of that prescribed by the Legislature, we have no doubt that the courts have the inherent authority to impose conditions of probation reasonably designed to advance the goal of rehabilitation and protection of the public.

We discern nothing in the Casino Control Act, (*N.J.S.A.* 5:12–1 to –190) which derogates against the conclusion we reach here. *N.J.S.A.* 5:12–71a(2) authorizes the Casino Control Commission to exclude from casino hotels persons "who have been convicted of a criminal offense under the laws of any state or United States, which is punishable by more than [six] months in prison or any crime or offense involving moral turpitude...." *See also N.J.A.C.* 19:48–1.3(a)3. That statute and the implementing regulations do not impinge upon the judiciary's authority to impose reasonable conditions of probation consonant with the aim of rehabilitating a convicted offender. Where a defendant has been convicted of a casino related crime with psychological roots in compulsive gambling, the sentencing court may, as a condition of probation, impose reasonable restrictions, including temporary exclusion, on his right to enter casino hotels. We are satisfied that this power exists notwithstanding the "pervasive and intensive" statutory and administrative controls over casino operations established by the Casino Control Act. *Knight v. Margate,* 86 *N.J.* 374, 380–381, 431 *A.*2d 833 (1981).

*Uston v. Resorts International Hotel, Inc.,* 89 *N.J.* 163, 445 *A.*2d 370 (1982), is not to the contrary. There, the Supreme Court held that the Casino Control Act precluded a casino from excluding a patron on the basis of his "card counting" method of playing blackjack. *Id.* at 166, 445 *A.*2d 370. The Court was concerned with the "credibility and integrity of the regulatory process and of casino operations." *Id.* at 169, 445 *A.*2d 370,

quoting *N.J.S.A.* 5:12–1(b). The questions presented in this case were in no sense implicated.

## V.

In light of our disposition of these issues, we need not address defendant's remaining argument, *i.e.*, that he lacks the ability to pay the fine and restitution. Because we have substantially reduced the restitution order, we need not reach this question. *See N.J.S.A.* 2C:44–2b and c. Should defendant be unable to meet his payment schedule, he may move for reduction or modification. *See N.J.S.A.* 2C:46–2 and –3.

As modified, the judgment of conviction is affirmed.