┌─────────────────────────────────────────────────────────┐
│              **NOT FOR PUBLICATION WITHOUT THE**         │
│            **APPROVAL OF THE APPELLATE DIVISION**        │
│                                                          │
│  This opinion shall not "constitute precedent or be binding upon any court."  │
│  Although it is posted on the internet, this opinion is binding only on the   │
│    parties in the case and its use in other cases is limited. R.1:36-3.       │
└─────────────────────────────────────────────────────────┘

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5494-13T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ANNA N. TALIAFERRO,

    Defendant-Appellant.

_____

              Argued May 10, 2017 — Decided July 18, 2017

              Before Judges Lihotz, Hoffman and Whipple.

              On appeal from Superior Court of New Jersey,
              Law Division, Passaic County, Indictment No.
              10-12-0179.

              Frank M. Gennaro, Designated Counsel, argued
              the cause for appellant (Joseph E. Krakora,
              Public Defender, attorney; Mr. Gennaro, on the
              brief).

              Brian Uzdavinis, Deputy Attorney General,
              argued the cause for respondent (Christopher
              S. Porrino, Attorney General, attorney; Mr.
              Uzdavinis, of counsel and on the brief).

PER CURIAM

    Defendant Anna Taliaferro appeals from the May 15, 2014

judgment of conviction, after a jury found her guilty of second-

degree official misconduct, N.J.S.A. 2C:30-2; second-degree pattern of official misconduct, N.J.S.A. 2C:30-7(a); second-degree theft by deception, N.J.S.A. 2C:20-4; third-degree tampering with public records or information, N.J.S.A. 2C:28-7; third-degree forgery, N.J.S.A. 2C:22-1; and second-degree misconduct by a corporate official, N.J.S.A. 2C:21-9(c). We affirm the conviction, however, we remand for re-sentencing consistent with this opinion.

Defendant worked in the Paterson School District (District) from 1970 until 2007. In 1974, defendant became Paterson's Title One parent coordinator. Title One is a federal program "to provide all children significant opportunity to receive a fair, equitable, and high-quality education and to close educational achievement gaps," 20 U.S.C.A. § 6301, and provides federal grants to state educational agencies for this purpose. 20 U.S.C.A. § 6311. Each school receiving grant money was required, among other things, to "convene an annual meeting . . . , to which all parents of participating children shall be invited and encouraged to attend, to inform parents of their school's participation . . . and to explain the requirements of [Title One] and the right of the parents to be involved." 20 U.S.C.A. § 6318(c)(1).

Defendant's implementation of these mandated annual meetings using Title One grant money through the Parent Resource Center

(PRC) is the focus of this case. Defendant was the District-wide parent coordinator, and eventually Supervisor for the PRC, whose responsibilities included participating and assisting in all school-related parenting activities on a District, state, and national level.

In the 1980s, defendant helped create the New Jersey Association for Parent Coordinators (NJAPC), a non-profit corporation with goals mirroring those of the PRC, and eventually became the president of the entity. The NJAPC started holding conferences in the 1990s, and defendant used her District office to plan and organize the conferences for parents and NJAPC during work hours. The purpose and objectives of the NJAPC and PRC were similar.

The primary function of the NJAPC was to plan and host the annual parent conferences with the New Jersey Department of Education (NJDOE). The NJAPC organized the annual parent conferences using Title One grant money from school districts, including the District. The NJAPC operated out of the PRC office and funded itself through fees collected for the conferences.

Defendant retained decision-making authority for both the NJAPC and the PRC. As president of the NJAPC, defendant presided over, organized, and ran the NJAPC during regular business hours using District offices, employees, equipment, and resources.

 A-5494-13T2

District employees prepared for the annual parent conferences at defendant's behest during District work hours. District email addresses, telephones, and fax numbers appeared on NJAPC letterheads.

The NJAPC set the parent conference fees and charged the school districts, including the District, for each parent participating in the annual conferences. The conferences were held at a hotel, and attendee costs included registration fees, lodging fees, and meal fees. In her capacity as parent coordinator for the PRC, defendant was the liaison between the District and the NJAPC, and she provided the District's initial funding approval for money to be disbursed to her in her other role at the NJAPC.

District officials were aware of the arrangement, at least in part, and offered oversight, which defendant considered sanctioned her conduct. Defendant's supervisor at the District was aware of defendant's dual roles for the PRC and NJAPC. Other witnesses from the District and NJDOE were aware defendant was associated with the NJAPC. Defendant asserts every District superintendent, to whom she reported, was aware of her affiliation with the NJAPC and her role as president of the NJAPC was prominent on conference programs. Some District and NJDOE officials knew of and even encouraged NJAPC's use of the District's office and equipment.

4

However, some District officials involved in approving funding and overseeing defendant in her capacity as a PRC parent coordinator were unaware of overcharges by the NJAPC. Some officials were unaware the NJAPC was using District offices, employees, equipment, and resources.

Between 2003 and 2007, the NJAPC received over $1.4 million with approximately $655,000 coming from the District. One of the allegations leveled against defendant is the NJAPC overcharged the District by $191,885.21 and defendant personally benefitted therefrom. According to District officials, any overage or surplus in charges to the District should have resulted in a credit or refund to the District. Defendant denied submitting false purchase orders and insisted the NJAPC purchase orders were accurate.

Of particular concern were payments made to defendant's son, Thomas Taliaferro (Thomas), for providing information technology services. He received a monthly salary for those services. He also provided technology services at each of the annual conferences for additional stipends of up to $18,000. Testimony elicited at trial stated Thomas performed minimal work for the PRC or NJAPC despite using District offices for personal use.

Both defendant and Thomas used debit cards to draw from the NJAPC corporate account. The majority of Thomas's withdrawals were for uses in Virginia, where he lived as a musician. Thomas

made purchases and cash withdrawals using NJAPC cards for hundreds of thousands of dollars between 2003 and 2007, and funded the construction of a recording studio in Virginia Beach. Transactions were made at electronics stores, car rentals, hotels, and restaurants. He also used the NJAPC tax identification number to make purchases free of sales tax. Thomas also received $127,000 in checks and wire transfers from the corporate account.

In addition to using debit cards for personal use, defendant received four checks from the NJAPC totaling $30,378. In 2007, defendant directed Shalimar Williams, an NJAPC employee not authorized to execute checks, to write out a check for $25,000 and sign it as NJAPC's treasurer, Joann Williams-Harris, the only other NJAPC official authorized to execute checks.

The School Ethics Act, N.J.S.A. 18A:12-21 to -34, required defendant to fill out a School Ethics Commission Personal/Relative and Financial Disclosure Form for District employees each year. See also N.J.S.A. 18A:12-26. The forms require disclosure of various financial interests from the previous calendar year, including any source of personal income received by defendant or an immediate family member in excess of $2,000, or compensation for a financial interest held by defendant, relative, or any business that was party to a contract with the District. The forms require disclosure of fees, expenses, or reimbursements of

6

aggregate amounts over $250 received by District employees.  From 2003 to 2007, defendant made no disclosures on behalf of herself or Thomas.  Defendant reported the $25,000 check as income on her tax returns but did not list it in the disclosure forms.

Based on the foregoing, a December 13, 2010 indictment charged defendant with various crimes between February 13, 2003, and July 6, 2007.  Count one alleged defendant engaged in official misconduct: by not disclosing her employment and financial interest in the NJAPC in her annual ethics disclosures; creating the false impression the NJAPC was an entity with which she or a relative had no financial or personal involvement; hiring the NJAPC as an outside vendor for the annual parent conferences; utilizing District employees and equipment on behalf of the NJAPC; overcharging the District through the NJAPC; and directing a District employee to forge a check in excess of $200.  Count two alleged defendant engaged in a pattern of official misconduct by committing two or more acts of official misconduct.

Count three alleged defendant committed theft by deception by obtaining $102,226.81[1] from the District by overcharging the District for the parent conferences and tampering with public records or information by making false entries in government

---

[1]   This amount was subsequently amended to $191,885.21 and is not disputed by defendant.

A-5494-13T2

documents or records. Count four charged defendant with forgery for presenting a check for $25,000 knowing it was not authorized and the signature was forged. The final count charged defendant committed misconduct by a corporate official for using the NJAPC to further defendant's criminal objectives and derive a benefit in excess of $75,000.

Defendant moved to dismiss the indictment on September 26, 2013. The motion was denied and trial was conducted between October 2, 2013 and December 26, 2013.

On November 19, 2013, defendant moved for acquittal based on the State's failure to present sufficient evidence and convict. The judge issued a preliminary denial of the motion but did not provide a statement of reasons for his denial until after the jury verdict. The jury found defendant guilty on all seven counts on December 26, 2013.

On May 15, 2014, the trial judge sentenced defendant to a term of five years in state prison on each count, to run concurrent, with five-year period of parole ineligibility on counts one through three, two-year parole period of parole ineligibility on counts four and five, and flat sentences on counts six and seven. On June 5, 2014, the judge granted defendant's motion for bail pending appeal.

On appeal, defendant raises the following arguments:

POINT I
DEFENDANT WAS ENTITLED TO JUDGMENTS OF ACQUITTAL ON EACH OF THE COUNTS IN THE INDICTMENT.

    A. THEFT BY DECEPTION.

    B. OFFICIAL MISCONDUCT.

    C. TAMPERING WITH PUBLIC RECORDS.

    D. FORGERY.

    E. MISCONDUCT BY A CORPORATE OFFICIAL.

POINT II
THE JURY CONSIDERED ACTS OUTSIDE THE STATUTE OF LIMITATIONS ON THE OFFICIAL MISCONDUCT, PATTERN OF OFFICIAL MISCONDUCT, AND THEFT BY DECEPTION COUNTS.

POINT III
THE JURY'S VERDICT CANNOT SUPPORT A CONVICTION FOR A PATTERN OF MISCONDUCT.

POINT IV
THE JURY INSTRUCTIONS AND VERDICT SHEET WERE INADEQUATE, CONFUSING AND MISLEADING.

POINT V
THE TRIAL COURT ADMITTED IMPROPER LAY OPINION TESTIMONY ON THE ULTIMATE FACTUAL ISSUE.

POINT VI
THE TRIAL COURT ADMITTED IMPROPER "OTHER CRIMES" EVIDENCE.

POINT VII
THE TRIAL COURT'S REFUSAL TO DOWNGRADE THE CONVICTIONS AND WAIVE THE PERIOD OF PAROLE INELIGIBILITY WERE AN ABUSE OF DISCRETION; COUNTS THREE THROUGH SIX SHOULD HAVE BEEN MERGED; AND RESTITUTION WAS IMPROPERLY IMPOSED.

Turning to defendant's first argument, we address the applicable standard of review.  <u>Rule</u> 3:18-1 provides defendants with a mechanism for seeking a judgment of acquittal at the close of the State's case.  The standard governing such motions is set forth in <u>State v. D.A.</u>, 191 <u>N.J.</u> 158, 163 (2007):

> On a motion for judgment of acquittal, the governing test is:  whether the evidence viewed in its entirety, and giving the State the benefit of all of its favorable testimony and all of the favorable inferences which can reasonably be drawn therefrom, is such that a jury could properly find beyond a reasonable doubt that the defendant was guilty of the crime charged.
>
> [(citing <u>State v. Reyes</u>, 50 <u>N.J.</u> 454, 458-59 (1967)).]

Our review of a trial court's denial of a motion for acquittal is "limited and deferential[,]" and is governed by the same standard as the trial court.  <u>State v. Reddish</u>, 181 <u>N.J.</u> 553, 620 (2004).

Defendant challenges her conviction based on the judge's denial of her motion for acquittal.  On January 2, 2014, following defendant's conviction, the judge offered his reasoned denial of defendant's motion applying the <u>Reyes</u> standard viewing the evidence in its entirety, and giving the State "the benefit of all

its favorable testimony and . . . inferences which reasonably could be drawn therefrom." See Reyes, supra, 50 N.J. at 458-59.

The heart of defendant's challenge to her conviction for theft by deception is the lack of evidence of an agreement stating the District promised to pay only NJAPC's actual costs to conduct the conferences, and conversely, the lack of evidence of an obligation to refund overpayments. Relying on the Reyes standard, the judge found ample evidence to support a conviction for the offense.

A person may be convicted of theft by deception if he or she purposely

> [c]reates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind, and including, but not limited to, a false impression that the person is soliciting or collecting funds for a charitable purpose; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he [or she] did not subsequently perform the promise[.]
>
> [N.J.S.A. 2C:20-4(a).]

Theft by deception "occurs where one obtains the property of another by purposely creating a false impression." State v. Krueger, 241 N.J. Super. 244, 249 (App. Div. 1990) (quoting State v. Talley, 184 N.J. Super. 167, 169 (App. Div. 1982), rev'd on other grounds, 94 N.J. 385, 388 (1983)).

Viewing the State's evidence in a favorable light, the proofs demonstrated defendant oversaw both the NJAPC and the PRC, and the NJAPC charged the PRC more than it needed to pay for the conferences. Defendant and Thomas derived a benefit through personal receipt of NJAPC monies. Defendant provides no legal support for the contention an agreement between the parties (or lack thereof) would nullify the State's ability to satisfy the elements of theft by deception. Whether defendant purposely overcharged the District is a question of fact for the jury. The existence, or non-existence, of a refund agreement or policy is not a legal bar to conviction. Moreover, testimony from the various District officials asserted overcharges paid by the District should have resulted in a credit or refund to the District, as outlined in the District's policy's and purchasing procedures and the employee handbook. The District's failure to prevent defendant from retaining fees not spent on conference bills does not sanction the conduct.

Defendant's argument with respect to official misconduct[2] focuses on her state of mind. She denies taking action she knew to be unauthorized; the District acquiesced in her conduct and

---

[2] Defendant was acquitted on the allegation in count one that she committed official misconduct by "[d]irecting a subordinate [District] employee to forge the signature of another employee on [a] NJAPC check[.]"

should have advised her she was engaging in criminal wrongdoing subject to charges. We reject defendant's argument.

Four elements must be demonstrated:

> (1) defendant was a 'public servant' within the meaning of the statute, (2) who, with the purpose to obtain a benefit or deprive another of a benefit, (3) committed an act relating to but constituting an unauthorized exercise of her office, (4) knowing that such act was unauthorized or that she was committing such act in an unauthorized manner."
>
> [State v. Saavedra, 222 N.J. 39, 58 (2015) (citing State v. Thompson, 402 N.J. Super. 177, 191-92 (App. Div. 2008)).]

See also N.J.S.A. 2C:30-2.

Here, the State's theory was two-fold: first, defendant appropriated District funds to which she was not entitled by overcharging, using District resources, and second, she ignored the obligation to refund overcharges. Defendant argues she was unaware the NJAPC was not entitled to amass a profit from sums the District paid, and she did not know she had an obligation to refund overcharges. Hence, there are elements of misfeasance and nonfeasance.

There was sufficient evidence to demonstrate active misfeasance because, among other things, defendant made misrepresentations on her school ethics disclosure forms,

overcharged the District on behalf of the NJAPC (and derived a benefit therefrom), and misused District employees and resources.

In order to convict a person of official misconduct by nonfeasance, the duty to act must be "so clear that the public servant is on notice as to the standards that he must meet." Ibid. (citing State v. Hinds, 143 N.J. 540, 545-46 (1996)). Such notice must be clear so as to avoid prosecuting public officials for a "mere breach of good judgment." Hinds, supra, 143 N.J. at 546 (citing Cannel, New Jersey Criminal Code Annotated, cmt. on N.J.S.A. 2C:3-2).

There was also sufficient evidence to demonstrate defendant's misconduct by nonfeasance because she did not refund overcharges to the District. Defendant's argument no one at the District imposed an affirmative obligation to refund overcharges is belied by the policies and procedures set out in the employee handbook. District officials were aware of and encouraged defendant's participation in the NJAPC, but some District officials were not aware how defendant's participation in the PRC and NJAPC benefitted defendant and Thomas, or the extent to which she was using District resources. Defendant's knowledge of her own wrongdoing is corroborated by evidence showing she and Thomas used Title One grant money for personal use.

A-5494-13T2

In light of the foregoing considerations and viewed in a favorable light, the evidence put forth by the State was sufficient to lead to a conviction. There was at least a scintilla of evidence in existence which, when viewed in a light favorable to the State, set forth a prima facie cause for conviction. See State v. DeRoxtro, 327 N.J. Super. 212, 224 (App. Div. 2000) (quoting State v. Kluber, 130 N.J. Super. 336, 341 (App. Div. 1974), certif. denied, 67 N.J. 72 (1975)).

Defendant asserts she is arguably responsible only for ethical violations not criminal conduct. In State v. Thompson, we overturned criminal liability for conduct that violated conflict of interest laws, N.J.S.A. 52:13D-23, because those ethical violations did not provide sufficient notice such misconduct would lead to a criminal conviction. 402 N.J. Super. 177, 197-204 (App. Div. 2008). We reasoned while a criminal prosecution could not arise based on a violation of certain ethical rules alone, we recognized a person could be convicted for acceptance of a benefit for violating an official duty defined by ethical rules. Id. at 201. Here, defendant's conduct exceeded mere ethical transgression because she personally profited from misapplication of public funds, among other things. Defendant offers no authority for the proposition either NJAPC or she were

personally entitled to retain public funds collected and not used to pay for conferences.

Finally, we reject defendant's argument she did not hide her affiliation with the NJAPC and that the State alleged she "hid" her affiliation. Her leadership of the NJAPC was not the issue. The indictment alleges she hid her financial interest in the NJAPC.

With respect to tampering with public records, defendant contends she did not knowingly include false information on the financial disclosure statements. She again asserts her affiliation with the NJAPC was not hidden.

Pursuant to N.J.S.A. 2C:28-7(a)(1), a person tampers with public records or information if he or she "[k]nowingly makes a false entry in, or false alteration of, any record, document or thing belonging to, or received or kept by, the government for information or record, or required by law to be kept by other for information of the government." Here, defendant oversaw the preparation of and presented the District with financial disclosure forms and purchase orders. Both sets of documents contained false information. The forms were regularly exchanged between the District and defendant, either in her capacity as a PRC Supervisor or as president of the NJAPC.

Defendant argues she should have been acquitted of forgery because she was entitled to compensation for years of service even

though the NJAPC was a non-profit corporation. She further contends no one was defrauded or injured and the check was a genuine instrument to pay her $25,000, which was legal for NJAPC to do.

Defendant misconstrues the alleged offense. A person commits an act of forgery when he or she, "with purpose to defraud or injure anyone, or with knowledge that he [or she] is facilitating a fraud or injury to be perpetrated by anyone, . . . [a]lters or changes any writing of another without his [or her] authorization." N.J.S.A. 2C:21-1(a)(1).

When viewed in a light favorable to the State, the evidence showed defendant instructed an NJAPC official who had no check-writing authority to execute a check to defendant using the signature of another individual without that individual's consent or knowledge. Defendant's argument "no one was defrauded or injured" fails as testimony revealed she directed payment to herself and benefitted from sums of grant money otherwise earmarked for Title One objectives.

Finally, defendant repeats many of the reasons given above to assert the State failed to prove misconduct by a corporate official. An individual may be convicted of misconduct by a corporate official if the individual "purposely or knowingly uses, controls or operates a corporation for the furtherance or promotion

17

of any criminal object." N.J.S.A. 2C:21-9(c). We disagree with defendant for the same reasons discussed above. Defendant was president of the NJAPC who maintained total control over its operation.

## II.

Defendant's next argument concerns the timeframe of the indictment, which is a question of law. "A trial court's 'interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference.'" State v. Twiggs, 445 N.J. Super. 23, 28 (App. Div. 2016) (quoting State v. Pomianek, 221 N.J. 66, 80 (2015)). Where a trial court "resolve[s] an issue of law in construing a statute, [its] determinations are reviewed de novo." In re Expungement Petition of J.S., 223 N.J. 54, 72 (2015) (citing State v. J.D., 211 N.J. 344, 354 (2012)); see also State v. Cagno, 211 N.J. 488, 505-06 (2012) (citing State v. Hupka, 203 N.J. 222, 231 (2010)), cert. denied, 568 U.S. 1104, 133 S. Ct. 877, 184 L. Ed. 2d 687 (2013).

Defendant argues we should reverse her conviction on counts one through three because the jury considered acts outside the applicable statutes of limitations on those counts. We disagree.

The first three counts of the indictment allege defendant committed acts constituting official misconduct between February 13, 2003, to July 6, 2007. N.J.S.A. 2C:1-6(b)(3) provides a seven-

year limitation period for official misconduct, while the remaining counts are subject to a five-year limitation, pursuant to N.J.S.A. 2C:1-6(b)(1). The State presented evidence outside the seven-year period, and defendant objected during trial. The judge overruled the objections concluding the statute of limitations on official misconduct does not toll until the official leaves public office.

"An offense is committed when every element of the offense occurs or 'at the time when the course of conduct or the defendant's complicity therein was terminated [when it] plainly appears' that the Legislature intended to prohibit a continuing course of conduct." State v. Diorio, 216 N.J. 598, 613 (2014) (quoting N.J.S.A. 2C:1-6(c)). A continuing offense "involves conduct spanning an extended period of time and generates harm that continues uninterrupted until the course of conduct ceases." Id. at 614 (citing State v. Ireland, 126 N.J.L. 444, 445 (1941)). Theft by deception can be a "complex scheme involving many persons or businesses and play out over the course of many days, weeks, months, or even years." Id. at 618. Similarly, official misconduct may be considered a continuing offense for "as long as [the public official] is in office" and is able to "use his [or her] influence" to achieve the criminal purpose. Id. at 617. Thus, when there is a continuing offense, the applicable statute

19

of limitations period only begins to run when the course of conduct is complete.

Defendant argues State v. Childs, 242 N.J. Super. 121 (App. Div.), certif. denied, 127 N.J. 321 (1990), stands for the proposition that the aggregation of thefts is a question for the jury, and each conference was a separate event. In Childs, we found "theft by deception is a continuing offense for purposes of the statute of limitations when the defendant is engaged in a continuing scheme or course of behavior to obtain funds by deception." Diorio, supra, 216 N.J. at 616 (citing Childs, supra, 242 N.J. Super. at 131). Additionally, "the finder of fact must first determine whether the thefts are constituent parts of a single scheme or course of conduct" before aggregating "the amount involved in two or more thefts." Childs, supra, 242 N.J. Super. at 131.

Here, defendant's statute of limitations objections were questions of law determined by the judge, but the underlying facts in dispute were questions for the jury. The jury found beyond a reasonable doubt defendant committed the crimes enumerated in counts one through three and her actions between 2003 and 2007 "constitute[d] one continuous scheme or course of conduct (as opposed to separate incidents)." Thus, we agree with the trial judge defendant's maintenance of public office and continuing

course of conduct tolled the applicable repose statutes, because defendant engaged in a pattern of continuing conduct through the timeframe in the indictment.

## III.

Defendant argues the trial judge erred by instructing the jury if it found defendant guilty of two or more of the acts enumerated in count one,[3] then the jury must find her guilty on count two. Relying on State v. Quezada, 403 N.J. Super. 277 (App. Div. 2008), defendant contends because she was convicted of official misconduct, only one act was committed, and therefore, there was no pattern.

Defendant did not object to the jury charge or verdict sheet at the time of trial. Defendant is therefore barred from raising jury charge issues, because "no party may urge as error any portion of the charge to the jury or omissions therefrom unless objections are made thereto before the jury retires to consider its

---

[3] Count one alleges defendant engaged in official misconduct through the following acts: failing to list her employment and financial interest in the NJAPC in her annual ethics disclosures; creating the false impression that the NJAPC was a separate business entity with no financial or personal involvement by defendant or a relative; hiring the NJAPC as an outside vendor for the annual parent conferences, which were funded with Title One grant monies; utilizing District employees and equipment on behalf of the NJAPC; improperly charging the District through the NJAPC; and directing a District employee to forge a check in excess of $200.

21

verdict[.]" R. 1:7-2. The failure to object raises the presumption that these instructions were adequate. State v. Morais, 359 N.J. Super. 123, 134-35 (App. Div.) (citing State v. Macon, 57 N.J. 325, 333 (1971)), certif. denied, 177 N.J. 572 (2003). Thus, the plain error standards applies. See State v. Vallejo, 198 N.J. 122, 140 (2009) (quoting State v. Burns, 192 N.J. 312, 341 (2007)).

Here, unlike in Quezada, defendant was not charged with multiple counts of official misconduct, only one count of official misconduct with multiple instances of misconduct contained within, and one count of pattern of misconduct. Because the jury found defendant committed more than two of the acts from count one, defendant could also be convicted of count two. We reject the argument defendant was punished twice for the same offense, and based on our review of the record, we find no plain error in the instruction.

IV.

Defendant argues the jury instructions and verdict sheet for official misconduct were inadequate, confusing, and misleading because the judge "refus[ed] to instruct the jury as to the defense of mistake of fact or law," or "that, for purposes of official misconduct, an act cannot be unauthorized if permitted by policy or practice." Defendant contends the instructions regarding

22

certain ethical standards was misleading and the verdict sheet was inadequate because it did not require the jury to find whether an unauthorized act resulted in a benefit to her or to Thomas.

When a claim of error is made on appeal for an unchallenged jury charge, it will be considered plain error if it "prejudicially affect[s] the substantial rights of the defendant." State v. R.B., 183 N.J. 308, 321-22 (2005) (quoting State v. Hock, 54 N.J. 526, 538 (1969), cert. denied, 399 U.S. 930, 90 S. Ct. 2254, 26 L. Ed. 2d 797 (1970)).

Here, the judge charged the jury regarding defendant's state of mind at the time she committed the crimes in a manner inconsistent with the model jury charges, see Model Jury Charge (Criminal), "Ignorance or Mistake" (May 7, 2007). Defendant is correct the judge erred holding defendant did not provide proper notice, pursuant to Rule 3:12-1, of the defense of ignorance or mistake as to a matter of fact or law, N.J.S.A. 2C:2-4(a), because such notice is only required if a defense asserted to N.J.S.A. 2C:2-4(c) is raised. R. 3:12-1. However, the error is harmless.

The judge declined to include language in the charge that an act is "not unauthorized" if permitted "by policy or practice." Considering the totality of the entire charge, the jury was not "misinformed as to the controlling law." See R.B., supra, 183 N.J. at 324. The jury heard testimony about the District policies,

as well as contradicting testimony regarding defendant's and District's actual practices and the NJAPC's actual practices. The jury was free to consider such testimony in reaching a verdict.

Finally, we reject defendant's argument the verdict sheet was misleading because it did not specifically identify who benefitted from defendant's misconduct. The verdict sheet tracked the language of the official misconduct statute and only required a finding the misconduct was carried out "with purpose to obtain a benefit for [defendant] or another." N.J.S.A. 2C:30-2. Extensive testimony demonstrated the benefits defendant and Thomas received from NJAPC's overcharging the District. The verdict sheets are clear and understandable, and based on the testimony presented, the jury could reach a verdict without confusion. Moreover, defendant did not object.

V.

Defendant argues the judge admitted lay testimony in the absence of expert testimony on a critical factual issue. She argues the judge improperly allowed multiple witnesses to give testimony regarding whether defendant had a duty to refund money. We disagree.

"[A] trial court's evidentiary rulings are 'entitled to deference absent a showing of an abuse of discretion, i.e., there has been a clear error of judgment.'" State v. Brown, 170 N.J.

24                                                          A-5494-13T2

138, 147 (2001) (quoting State v. Marrero, 148 N.J. 469, 484 (1997)). We do not substitute our own judgment for that of the trial court, unless "the trial court's ruling was so wide of the mark that a manifest denial of justice resulted." Ibid. (quoting Marrero, supra, 148 N.J. at 484). We do not accord deference to the trial judge's legal conclusions. State v. Nantambu, 221 N.J. 390, 402 (2015). "To the extent [a] defendant's argument . . . raises a question of law, . . . our review is de novo and plenary." State v. J.D., 211 N.J. 344, 354 (2012).

Pursuant to N.J.R.E. 702, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." Expert opinion must be based on facts or data "perceived by or made known to the expert at or before the hearing." N.J.R.E. 703. The facts or data "need not be admissible in evidence" if it is "of a type reasonably relied upon by experts" in the relevant field. Ibid. Error in the admission of evidence is not harmful if the defendant's fundamental rights were not impaired and the cumulative evidence against the defendant enjoys great weight. State v. Soto, 340 N.J. Super. 47, 65 (App. Div.), certif. denied, 170 N.J. 209 (2001).

The State elicited testimony from District officials about their knowledge of defendant's role with the NJAPC and the NJAPC's overcharging of the District, including testimony regarding policies and procedures within the District's employee handbook and the impropriety of operating a corporation using District offices, equipment and resources on District hours. When questioning a business administrator regarding the District's policy for recovery of overcharges, the following exchange took place:

> Prosecutor: [A]nd now per the [District's] policy, if a purchase order is approved, [the District] will be the vendor. And then the [District] later finds out that the actual cost was less than what [the District] paid to the vendor. Per the [District's] policies, what does —
>
> Counsel: [I am] going to object.
>
> . . . .
>
> Counsel: Your [h]onor, she asked him to speculate and asked him to give — he assumes there is a policy. That [has not] been testified to up to this point.
>
> The court: Well, I [do not] know it asked for speculation; and I [do not] know that it asked for an opinion.

[There is] really only one of two answers. I guess there could be more. But either the [answer is] going to be ["]well, we let them keep the money because it was our mistake and, you know; or [it is] going to be no, if we paid someone and they paid less, we would expect a refund.["]

I [do not] think that [that is] something that is beyond the ken of a juror. I [do not] think it calls for expert opinion. I [do not] think [it is] speculating.

I think [it is] pretty basic to the business world at all levels that if someone overpays for something, they feel they want a refund. I [cannot] think of many examples where that [does not] happen.

The judge held a hearing outside the presence of the jury to determine whether the answer was admissible, and permitted the witness to answer:

Prosecutor: Mr. Assara, per the school district's policy, what if a purchase order is approved, [the District] pays the vendor, and then the school district later found out that the actual cost was less than what [the District] paid to the vendor? What would the school district expect the vendor to do?

27

Witness:          Refund the overpayment.

Another District business administrator testified no overt agreement existed permitting the NJAPC to retain overages, and proffered what the District's response would have been had it known there were overcharges. Defendant objected, and the judge overruled the objection because the District's response to overcharges was supported by previous testimony about its purchase manual.

Defendant argues these witnesses offered expert opinions. The witnesses did not offer opinions as to defendant's innocence or guilt and both witnesses' testimony related to their normal business practices or to previous testimony. Their testimony was therefore within the permissible scope and did not include technical or speculative testimony outside the ken of the average juror. Townsend v. Pierre, 221 N.J. 36, 53 (2015); State v. Kelly, 97 N.J. 178, 208 (1984). We discern no abuse of the court's discretion.

## VI.

Defendant argues the judge erred by admitting evidence of other crimes, contrary to N.J.R.E. 404(b), without applying the four-part test promulgated in State v. Cofield, 127 N.J. 328 (1992). In particular, defendant argues the judge should not have

admitted evidence of Thomas's expenditures or evidence of the monies paid to the NJAPC by other unnamed school districts.

Defendant did not object at trial, and the issue is therefore subject to a plain error analysis. See R. 2:10-2. Because we view the evidence of Thomas's use of NJAPC funds for personal reasons and the NJAPC's overcharging of other districts as intrinsic evidence "exempt from the strictures of [N.J.R.E.] 404(b)," we need not reach defendant's Cofield arguments. See State v. Rose, 206 N.J. 141, 177 (2011).

Generally, "evidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that such person acted in conformity therewith." N.J.R.E. 404(b). In order to admit such evidence "for other purposes," such evidence is limited as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute." Ibid. The admissibility of evidence pursuant to N.J.R.E. 404(b) is subject to the four-part Cofield test. Cofield, supra, 127 N.J. at 338.

However, where evidence "is intrinsic to the charged crime . . . even if it constitutes evidence of uncharged misconduct that would normally fall under [N.J.R.E.] 404(b)[,]" such evidence is not subject to the Cofield test "because it is not 'evidence of

<u>other</u> crimes, wrongs, or acts.'"  <u>Rose</u>, <u>supra</u>, 206 <u>N.J.</u> at 177.

The key distinction between intrinsic evidence and evidence that

is otherwise subject to an <u>N.J.R.E.</u> 404(b) analysis turns on

whether such evidence is of other crimes.  <u>Id.</u> at 179.  Borrowing

from the Third Circuit, our Supreme Court has identified two types

of intrinsic evidence subject only to a relevancy analysis pursuant

to <u>N.J.R.E.</u> 403 and not 404(b):

> we . . . reserve the "intrinsic" label for two
> narrow categories of evidence.  First,
> evidence is intrinsic if it "directly proves"
> the charged offense.  This gives effect to
> [<u>N.J.R.E.</u>] 404(b)'s applicability only to
> evidence of "<u>other</u> crimes, wrongs, or acts."
> If uncharged misconduct directly proves the
> charged offense, it is not evidence of some
> "other" crime.  Second, "uncharged acts
> performed contemporaneously with the charged
> crime may be termed intrinsic if they
> facilitate the commission of the charged
> crime."  But all else must be analyzed under
> [<u>N.J.R.E.</u>] 404(b).
>
> [<u>Id.</u> at 180 (quoting <u>United States v. Green</u>,
> 617 <u>F.</u>3d 233, 248-49 (3d Cir.), <u>cert. denied</u>,
> 562 <u>U.S.</u> 942, 131 <u>S. Ct.</u> 363, 178 <u>L. Ed.</u> 2d
> 234 (2010)).]

Defendant correctly notes she was not charged for any

impropriety regarding other school districts or for Thomas's

purchases, and no <u>Cofield</u> analysis was used before the subject

evidence was permitted.  However, no <u>Cofield</u> analysis was necessary

because the evidence was of "uncharged acts performed

contemporaneously with the charged crime" because those acts

"facilitate[d] the commission of the charged crime." Ibid. The overcharges and Thomas's personal expenditures were inextricably linked to defendant's overall scheme to defraud the District and other school districts. The evidence was intrinsic to a continuing scheme by defendant to accumulate money in an NJAPC account and convert it for personal use by defendant and her son.[4]

## VII.

Defendant raises three sentencing arguments: (1) the convictions on counts one and two should have been downgraded, and the parole disqualifiers on those counts should have been waived; (2) counts three through six should have been merged with counts one and two because the offenses in those counts constituted the basis of the official misconduct; and (3) no restitution should

---

[4] Even under a Cofield analysis, no reversal is warranted because the proffered "other crimes" evidence was: (1) "admissible as relevant to a material issue[,]" namely, defendant's actions in her capacity as NJAPC President and supervisor of the annual parent conference preparations; (2) "similar in kind and reasonably close in time to the offense charged[,]" as any overcharges to other districts were contemporaneous with overcharges to the District, and Thomas's personal use of the NJAPC accounts included use of other district's money; (3) "clear and convincing[,]" given the extensive testimony and financial proofs presented to the jury; and (4) permissible pursuant to N.J.R.E. 403, specifically, its "probative value . . . [was] not . . . outweighed by [any] apparent prejudice." See Cofield, supra, 206 N.J. at 159-60. As noted by the State, the "uncharged" misconduct "tend[ed] to established the existence of a larger continuing plan or scheme," and the "vast extent of defendant's [alleged] deceptive theft over several years." See N.J.R.E. 404(b).

have been ordered.  We agree counts three through six should have merged with counts one and two for sentencing and a restitution hearing should have been conducted.

"Appellate review of a sentence is restricted to whether the determination of the sentencing factors was appropriate, whether the determination was supported by competent evidence in the record, and whether the sentence is so unreasonable that it shocks the judicial conscience."  State v. Paduani, 307 N.J. Super. 134, 148 (App. Div.) (citing State v. O'Donnell, 117 N.J. 210, 215-16, (1989)), certif. denied, 153 N.J. 216 (1998); State v. Roth, 95 N.J. 334, 364-65 (1984); State v. Bull, 268 N.J. Super. 504, 508-09 (App. Div. 1993), certif. denied, 135 N.J. 304 (1994).

First, the judge declined to downgrade defendant's convictions and sentence her in the third-degree range, finding the aggravating and mitigating factors were in equipoise and defendant's case was not idiosyncratic.  See State v. Jarbath, 114 N.J. 394, 413 (1989) (noting instances where "the character and condition of the defendant are so idiosyncratic that incarceration or extended imprisonment for the purposes of general deterrence is not warranted"); N.J.S.A. 2C:44-1(f)(2) (allowing sentencing courts to downgrade convictions for sentencing purposes where the court is clearly convinced the mitigating factors outweigh the aggravating factors and where the interest of justice so demands).

In particular, the judge found aggravating factors four, nine, ten, and eleven, pursuant to N.J.S.A. 2C:44-1(a). The judge applied mitigating factors five, seven, ten, and eleven, pursuant to N.J.S.A. 2C:44-1(b). Applying mitigating factor five, the judge criticized the District at length for its lack of oversight. Given the balance of the aggravating and mitigating factors, the judge sentenced defendant at the lowest possible range for her convictions on counts one and two. The judge engaged in a satisfactory analysis of the applicable facts and found the aggravating and mitigating factors in balance. The judge's sentences on counts one and two were "grounded in competent, reasonably credible evidence." Roth, supra, 95 N.J. at 363. Moreover, he applied the correct legal analysis pursuant to N.J.S.A. 2C:44-1(f)(2), Jarbath, and State v. Rice, 425 N.J. Super. 375, 389 (App. Div.), certif. denied, 212 N.J. 431 (2012). We discern no clear error of judgment that would shock the judicial conscience. Roth, supra, 95 N.J. at 364.

Although the judge did not abuse his discretion in his sentencing analyses, we agree counts three through six should have merged with count one. In Quezada, the defendant firefighter was convicted of official misconduct and setting false fire alarms. Quezada, supra, 402 N.J. Super. at 287-88. We found merger of the defendant's false alarm convictions with the conviction for

official misconduct was appropriate because the false alarms constituted official misconduct.  Id. at 290.

The merger of offenses requires a double-jeopardy analysis. Id. at 287-88; see State v. Miles, __ N.J. __ (2017) ("We now join the majority of jurisdictions in returning to the Blockburger same-elements test as the sole test for determining what constitutes the 'same offense' for purposes of double jeopardy."). This analysis requires two steps, and "[t]he first step requires the court to consider whether the legislature intended to impose multiple punishments."  Id. at 288.

> If, however, the legislative intent to allow multiple punishment is not clear, the Court must then apply the test articulated in Blockburger v. United States, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), to determine whether the defendant is unconstitutionally faced with multiple punishment for the "same" offense.
>
> [Ibid. (citations omitted).]

Here, the offenses in counts three through six constituted the official misconduct charge.  These offenses should have merged.

Finally, defendant contends restitution was improper because the judge determined defendant was unable to pay a fine, and no restitution hearing took place.  We agree, and remand for a restitution hearing.

A-5494-13T2

N.J.S.A. 2C:44-2 provides a defendant can be required to pay restitution if "the victim . . . suffered a loss" and "[t]he defendant is able to pay." A sentencing judge has "considerable discretion" when determining whether a defendant has the present or future ability to pay. State v. Scribner, 298 N.J. Super. 366, 371 (App. Div. 1997). The judge must "explain the reasons underlying the sentence, including the decision to order restitution, the amount of the restitution, and its payment terms." Ibid. (citing State v. Newman, 132 N.J. 159, 1164-64 (1993)). "[T]here must be an explicit consideration of defendant's ability to pay." Ibid. (citing State v. Corpi, 297 N.J. Super. 86, 93 (App. Div. 1997)).

Here, the judge found defendant did not have the ability to pay a fine but granted restitution without a hearing based on the State's proofs at trial. Because the ability to pay is a prerequisite to imposing restitution under N.J.S.A. 2C:44-2, and the judge found defendant could not pay a fine, the trial judge's imposition of over $190,000 in restitution is incongruous. For this reason, we remand for a restitution hearing.

Affirmed in part, and remanded for re-sentencing and a restitution hearing.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5494-13T2