NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-5503-14T4
 A-0727-15T2

JOSHUA HAINES,

 Plaintiff-Appellant,

v. APPROVED FOR PUBLICATION

 June 1, 2017
JACOB W. TAFT, BONNIE
L. TAFT, jointly, severally APPELLATE DIVISION
and/or in the alternative,

 Defendants-Respondents,

and

JOHN MCHENRY,

 Defendant.

___________________________________________

TUWONA LITTLE,

 Plaintiff-Appellant,

v.

JAYNE NISHIMURA,

 Defendant-Respondent.

____________________________________________

 Argued (A-5503-14) and Submitted (A-0727-15)
 April 27, 2017 – Decided June 1, 2017

 Before Judges Lihotz, O'Connor and Mawla.
On appeal from Superior Court of New Jersey,
Law Division, Camden County, Docket Nos.
L-4310-13 and L-0536-14.

Vincent A. Campo argued the cause for
appellant Joshua Haines in A-5503-14 (Mr.
Campo, on the brief).

Michael J. Marone argued the cause for
respondents Jacob W. Taft and Bonnie L. Taft
in A-5503-14 (McElroy, Deutsch, Mulvaney &
Carpenter, L.L.P., attorneys; Mr. Marone, of
counsel and on the brief; Eric G. Siegel, on
the brief).

Susan Stryker argued the cause for amicus
curiae Insurance Council of New Jersey and
The Property Casualty Insurers Association
of America (Bressler, Amery & Ross, P.C.,
attorneys, Ms. Stryker, of counsel and on
the brief).

Stephen J. Foley, Jr., argued the cause for
amicus curiae, The New Jersey Defense
Association (Campbell, Foley, Delano &
Adams, LLC, attorneys, Mr. Foley, on the
brief).

Petrillo & Goldberg, PC, attorneys for
appellant Tuwona Little in A-0727-15
(Jeffrey M. Thiel, on the brief).

McElroy, Deutsch, Mulvaney & Carpenter,
L.L.P., attorneys for respondent Jayne
Nishimura in A-0727-15 (Michael J. Marone,
of counsel and on the brief; Eric G. Siegel,
on the brief).

Bressler, Amery & Ross, P.C., attorneys for
amicus curiae Insurance Council of New
Jersey and The Property Casualty Insurers
Association of America (Susan Stryker, of
counsel and on the brief).

 2
 A-5503-14T4
 Campbell, Foley, Delano & Adams LLC,
 attorneys for amicus curiae, New Jersey
 Defense Association (Stephen J. Foley, Jr.,
 on the brief).

 The opinion of the court was delivered by

O'CONNOR, J.A.D.

 These back-to-back automobile negligence actions are

addressed in a single opinion because they share a common legal

question. In their respective actions, plaintiff Joshua L.

Haines and plaintiff Tuwona Little sought to recover medical

expenses that exceeded the $15,000 personal injury protection

(PIP) limits provided in each plaintiff's automobile insurance

policy. The judges reviewing these matters each entered an

order barring the admission of these expenses; Haines and Little

now appeal from those respective orders.

 The Insurance Council of New Jersey, the Property Casualty

Insurers Association of America, and the New Jersey Defense

Association were granted amicus curiae status and filed briefs

advocating the position presented by defendants, urging an

insured may not recover such expenses from a tortfeasor.

Therefore, the question presented is whether N.J.S.A. 39:6A-12

precludes the recovery of medical expenses above those

collectible or paid under an insured's PIP provision in a

standard automobile insurance policy, including medical expenses

 3
 A-5503-14T4
exceeding any elected PIP option allowed in a standard policy

pursuant to N.J.S.A. 39:6A-4.3(e).

 For the reasons that follow, we conclude it does not and

reverse both orders.

 I

 A

 In his complaint, Haines sought damages for the injuries he

sustained in an automobile accident he claims was caused by the

negligence of defendants Jacob W. Taft and John McHenry.1

Defendant Bonnie L. Taft owned the car Taft was driving.2 At the

time of the accident, Haines lived in his father's household and

was covered under his father's standard automobile insurance

policy. That policy was subject to the limitation on lawsuit

threshold, see N.J.S.A. 39:6A-8(a) and 8.1(a), and provided PIP

coverage of $15,000, with a $2500 deductible.

 Although Haines' father, the named insured, designated his

health insurance provider as the primary payer of PIP benefits,

see N.J.S.A. 39:6A-4.3(d), Haines did not have health insurance

at the time of the accident. Under the terms of the policy,

1
 On February 20, 2015, the court entered an order granting
defendant McHenry summary judgment dismissal. Haines has not
appealed from this order.
2
 For ease of reference, unless otherwise specified, we refer
to defendants Jacob W. Taft and Bonnie L. Taft as "Taft."
 4
 A-5503-14T4
Haines' lack of health insurance mandated he pay a penalty of

$750 in addition to the $2500 deductible. The policy further

provided he was responsible for a twenty percent copayment for

each medical bill incurred above the deductible and penalty,

which when aggregated was $3250, and the sum of $5000.

 As a result of the injuries he sustained, Haines incurred

$43,000 in medical bills, leaving $28,000 in unreimbursed

medical expenses after the $15,000 in PIP benefits was

exhausted. Before trial, Haines dismissed his claim for non-

economic damages, but sought to recover from Taft the $28,000 in

uncompensated medical expenses. Thereafter, the court granted

defendant Taft's motion to bar Haines from introducing into

evidence the $28,000 in medical bills not covered by PIP

benefits. While not entirely clear from the record, it appears

when the court granted Taft's motion, no other issues remained

and the complaint was dismissed.

 B

 In her complaint, Little alleged she suffered injuries in a

car accident she claimed was caused by defendant Jayne

Nishimura's negligence. At the time of the accident, Little was

also covered under a standard automobile insurance policy. She

had selected the limitation on lawsuit option and a $15,000

limit of her PIP benefits, with a $500 deductible. The policy
 5
 A-5503-14T4
also provided she pay twenty percent of those bills between the

deductible amount and $5000.

 By the time of trial, Little had incurred $25,488 in

medical expenses, and sought to recover from Nishimura the

$10,488 in medical bills not satisfied by PIP benefits. Before

trial, the court granted Nishimura's motion to bar the admission

of any bill that exceeded the PIP limits in Little's policy.

 The jury found Little did not vault the limitation on

lawsuit threshold, and a judgment was entered dismissing her

complaint.3 Although the jury found Little was not entitled to

non-economic damages, were it not for the trial court's ruling,

Little would have pursued her claim for those medical bills

exceeding the $15,000 limit of her PIP benefits.

 II

 On appeal, Haines and Little contend the trial courts in

their respective actions erred by barring the introduction of

medical bills that exceeded the $15,000 limit in PIP benefits

provided in each plaintiff's policy. The issue is one of

statutory construction, which we review de novo. State ex rel.

K.O., 217 N.J. 83, 91 (2014).

3
 Little does not appeal from this judgment.

 6
 A-5503-14T4
 N.J.S.A. 39:6A-12 and N.J.S.A. 39:6A-2(k) principally

control the resolution of the issue presented on appeal.

N.J.S.A. 39:6A-12 (Section 12) provides in pertinent part:

 Except as may be required in an action
 brought pursuant to . . . [N.J.S.A. 39:6A-
 9.1], evidence of the amounts collectible or
 paid under a standard automobile insurance
 policy pursuant to . . . [N.J.S.A. 39:6A-4
 and N.J.S.A. 39:6A-10], amounts collectible
 or paid for medical expense benefits under a
 basic automobile insurance policy pursuant
 to . . . [N.J.S.A. 39:6A-3.1] and amounts
 collectible or paid for benefits under a
 special automobile insurance policy pursuant
 to . . . [N.J.S.A. 39:6A-3.3], to an injured
 person, including the amounts of any
 deductibles, copayments or exclusions,
 including exclusions pursuant to . . .
 [N.J.S.A. 39:6A-4.3], otherwise compensated
 is inadmissible in a civil action for
 recovery of damages for bodily injury by
 such injured person.

 . . . .

 Nothing in this section shall be construed
 to limit the right of recovery, against the
 tortfeasor, of uncompensated economic loss
 sustained by the injured party.

N.J.S.A. 39:6A-2(k) defines "economic loss" as "uncompensated

loss of income or property, or other uncompensated expenses,

including, but not limited to, medical expenses."

 There is no dispute the relevant language in the first

paragraph of Section 12 makes inadmissible evidence of the

amounts collectible or paid under a provision for PIP benefits

 7
 A-5503-14T4
in a standard policy. If these amounts are not admissible, they

are not recoverable. Defendants' specific contention is the

first paragraph makes inadmissible evidence of the first

$250,000 in medical expenses an insured incurs, because $250,000

is the PIP limit provided in a standard policy, unless otherwise

requested by the named insured. Plaintiffs, on the other hand,

claim this paragraph makes inadmissible only evidence of those

medical expenses that have been or are eligible to be paid under

an insured's PIP coverage provision. Given the controversy, we

review the subject language of Section 12.

 The first paragraph in Section 12 refers to "amounts

collectible or paid under a standard automobile insurance policy

pursuant to . . . [N.J.S.A. 39:6A-4]." A standard automobile

insurance policy is defined as a "policy with at least the

coverage required pursuant to . . . [N.J.S.A. 39:6A-4]." See

N.J.S.A. 39:6A-2(n). N.J.S.A. 39:6A-4 states, in relevant part,

that every standard automobile policy shall provide PIP benefits

for the named insured and members of his family residing in his

household in an amount not to exceed $250,000 per person per

accident. However, benefits payable under N.J.S.A. 39:6A-4 are

"subject to any option elected by the policyholder pursuant to

. . . [N.J.S.A. 39:6A-4.3]."

 8
 A-5503-14T4
 N.J.S.A. 39:6A-4.3 requires automobile insurers to provide

the options for PIP coverage set forth in this statute. These

include "[m]edical expense benefits in amounts of $150,000,

$75,000, $50,000 or $15,000 per person per accident." N.J.S.A.

39:6A-4.3(e). Additionally, N.J.S.A. 39:6A-4.3 provides if none

of these four medical expense benefits options is chosen, the

policy shall provide $250,000 in medical expense benefits

coverage. Ibid.

 Here, the named insureds on the policies providing coverage

to plaintiffs chose the $15,000 medical expense benefit option.

Plaintiffs do not contend defendants are responsible for the

first $15,000 in medical bills they incurred, as these amounts

have been satisfied by plaintiffs' respective PIP benefits and

are undeniably inadmissible under Section 12. Plaintiffs do

argue if they prove defendants are responsible for their medical

expenses, defendants must compensate them for those medical

expenses exceeding the $15,000 PIP limit, up to $250,000.

 Defendants and amici argue defendants are not liable for

any medical expenses between $15,000 and $250,000, contending a

standard policy provides $250,000 in PIP benefits, unless a

named insured affirmatively chooses one of the four options

available for reduced PIP coverage. Therefore, they maintain

all medical expenses up to $250,000 – the usual PIP limit in a
 9
 A-5503-14T4
standard policy – are inadmissible, making plaintiffs'

uncompensated medical bills between $15,000 and $250,000

inadmissible and unrecoverable.

 We cannot agree the phrase in Section 12, "amounts

collectible or paid under a standard automobile insurance policy

pursuant," refers solely to the maximum PIP coverage, or

$250,000, that is potentially available in a standard policy,

because the statutory language expressly allows varying levels

of PIP benefits paid or collectible under a standard policy.

N.J.S.A. 39:6A-4.3(e). Specifically, PIP benefits under a

standard policy are what a named insured chooses from the four

options provided: $15,000, $50,000, $75,000, or $150,000;

however, if the named insured fails to choose an option, he or

she is deemed to have chosen, by default, $250,000 in PIP

benefits.

 Because a standard policy is capable of providing one of

five different limits of PIP benefits, we reject the premise the

subject language in Section 12 only refers to a standard

automobile liability policy providing $250,000 in PIP benefits.

In context, the language refers to those PIP limits in a

standard policy covering the subject insured, making

inadmissible only those medical expenses up to and including the

PIP limits in that insured's standard policy. The "amounts
 10
 A-5503-14T4
collectible or paid" referred to in Section 12 depend upon the

limit of the insured's PIP coverage, which in this case is

$15,000 for both plaintiffs. Therefore, plaintiffs are barred

from admitting evidence of medical expenses up to that amount,

but evidence of their medical expenses between $15,000 and

$250,000 are admissible and recoverable against the tortfeasors,

subject to other statutory limitations discussed below.

 Defendants and amici urge Roig v. Kelsey, 135 N.J. 500

(1994), stands for the premise an injured insured may not

recover medical expenses beyond the insured's PIP limits. In

Roig, the defendant was a passenger in a vehicle struck from

behind by an automobile driven by the plaintiff. The defendant

incurred $1769 in medical expenses. Id. at 501. PIP benefits

covered the defendant's medical bills, but for his copayment and

deductible. Ibid. Specifically, the defendant sought to

recover $538.80 from the plaintiff, who in turn filed a

declaratory judgment action to establish his obligation to pay

the disputed sum to the defendant. Id. at 511. At that time,

the definition of economic loss in N.J.S.A. 39:6A-2(k) did not

include uncompensated medical expenses.

 The Court defined the issue before it as "whether N.J.S.A.

39:6A-12 . . . prohibits an injured party from recovering from a

tortfeasor the medical-expense deductible and twenty-percent
 11
 A-5503-14T4
copayment under a personal-injury-protection (PIP) policy."

Roig, supra, 135 N.J. at 501. The Court concluded the

Legislature intended the No-Fault Act, N.J.S.A. 39:6A-1 to -35,

enacted in 1972, to bar this "type of fault-based recovery."

Ibid.

 In its opinion, the Court provided a comprehensive summary

of the legislative history of the No-Fault Act, commenting the

impetus behind its enactment was to address increasing

automobile-insurance premiums and to eliminate the need to

determine fault in a lawsuit before an injured party could

recover medical expenses. Id. at 503. No-Fault benefits were

to be provided to an injured insured regardless of fault and

serve as the exclusive remedy for satisfying medical expenses.

Ibid. As a trade-off, there was to be "either a limitation on

or the elimination of conventional tort-based personal-injury

lawsuits." Ibid. (quoting Oswin v. Shaw, 129 N.J. 290, 295

(1992)). As part of the "trade-off," Section 12 was enacted,

providing:

 Evidence of the amounts collectible or paid
 pursuant to sections 4 and 10 of this act to
 an injured person is inadmissible in a civil
 action for recovery of damages for bodily
 injury by such injured person.

 [Id. at 504.]

 12
 A-5503-14T4
The purpose of prohibiting the introduction of evidence of PIP

payments was to prevent double recovery. Id. at 512.

 Significantly, the Court noted the kind of lawsuits the

Legislature sought to eliminate were those pertaining to minor

claims. Id. at 511. "[F]rom the inception of the no-fault

statutory scheme, the Legislature intended to eliminate minor

personal-injury-automobile-negligence cases from the court

system." Id. at 510 (emphasis added). "[T]he proponents of the

legislation anticipated that the elimination of minor personal-

injury claims from the court system not only would reduce

insurance premiums but also would provide prompt payment of

medical expenses to injured parties." Id. at 503. After the

No-Fault Act was passed, the Legislature amended this law in

1983, 1988, and 1990 "[i]n frequent attempts to lower the cost

of insurance and eliminate minor personal-injury claims." Id.

at 504.

 One of the measures enacted and in effect at the time Roig

was decided was that an insured pay a medical-expense deductible

of $250 and a twenty-percent copayment.4 Id. at 509. In Roig,

4
 Currently, an automobile insurer must provide named insureds
the option of choosing $500, $1000, $2000, and $2500 in medical
expense benefit deductibles. See N.J.S.A. 39:6A-4.3(a).
Further, "[m]edical expense benefits payable in any amount
between the deductible selected pursuant to subsection a. of
 13
 A-5503-14T4
the defendant argued the provision in Section 12 providing an

injured party the right to recover uncompensated losses from the

tortfeasor included the right to recover uncompensated

deductibles and copayments. Id. at 501.

 The Court disagreed, finding that to allow the recovery of

minor expenses, such as uncompensated deductibles and co-

payments, would be contrary to the legislative intent to reduce

minor claims from the court system. Id. at 515. The Court

further remarked:

 [F]rom the inception of the no-fault
 statutory scheme, the Legislature intended
 to eliminate minor personal-injury-
 automobile-negligence cases from the court
 system. [Defendant]'s interpretation of
 section 12 would completely defeat that
 purpose and would produce congestion in the
 court system once again with minor personal-
 injury claims, which here total $538.80.
 . . .

 Although we have not previously addressed
 this specific section 12 issue, both this
 Court and the lower courts have interpreted
 various other provisions of the No-Fault
 [Act]. An examination of those cases
 indicates that our courts have consistently
 recognized that the No-Fault [Act] was
 intended to be a trade-off between the
 prompt payment of medical expenses,
 regardless of fault, and a restriction on
 the right of an injured party to sue a
 tortfeasor for minor personal injuries
 stemming from automobile accidents.

this section and $5,000.00 shall be subject to the copayment
provided in the policy, if any." N.J.S.A. 39:6A-4.3.
 14
 A-5503-14T4
 Legislators had hoped that that trade-off
 would result in lower premiums and the
 elimination of a substantial number of cases
 from the calendar.

 [Id. at 510-11.]

 Defendant and amici cite the following passage from Roig as

supporting their argument the Legislature intended to bar an

injured insured from recovering any medical bills in excess of

an insured's PIP limits:

 We are satisfied that the Legislature never
 intended to leave the door open for fault-
 based suits when enacting the No-Fault
 [Act]. If we adopted [defendant]'s reading
 of the statute, courts would again feel the
 weight of a new generation of congestion-
 causing suits, and automobile-insurance
 premiums would again rise. If the
 Legislature disagrees with our
 interpretation of its intent, it is, of
 course, empowered to enact clarifying
 legislation.

 [Id. at 516.]

 Read in context with the entire opinion, we are satisfied

this language references the litigation of minor medical

expenses, such as copayments and deductibles, see id. at 515,

not all medical expenses.5 Consistent with the Legislature's

5
 Although the Roig Court did not identify what constitutes a
"minor" medical expense, in the Court's summary of the
legislative history of the No-Fault Act, the Court quoted from
the Governor's First Annual Message of 1971, which informed,
"The minor automobile negligence case, which ultimately results
in a judgment of settlement under $3000, is a significant
 15
 A-5503-14T4
goal of barring smaller, less consequential bills from being

litigated, Roig recognized minor medical expenses collectible or

paid for PIP deductibles and copayments are not admissible in

evidence. Moreover, significant to our analysis is the fact

this exclusionary provision in Section 12 remained intact even

after the Legislature expanded the definition of "economic loss"

in 1998 to include uncompensated medical expenses.

 Defendants and amici next argue the Court in Roig held

uncompensated copayments and deductibles were not recoverable,

even though the language in Section 12 permitted recovery of

uncompensated economic losses against a tortfeasor. From this,

defendants and amici conclude medical expenses in excess of an

insured's PIP limits must also be deemed unrecoverable. We

decline to adopt this inferential interpretation.

 First, as just noted, after Roig, the Legislature amended

the definition of "economic losses" in Section 12 to

specifically include uncompensated medical expenses, see

N.J.S.A. 39:6A-2(k), yet preserved the provision excluding the

amounts of copayments and deductibles from evidence.

 Second, the Roig Court found the Legislature intended minor

medical expenses be precluded from recovery because, if claims

contributing factor to the backlog in the civil courts." Roig,
supra, 135 N.J. at 510 (quoting Governor's First Annual Message
(1971)).
 16
 A-5503-14T4
of this nature were litigated, the court's docket would again

surge, one of the problems the Legislature sought to address by

enacting the No-Fault Act. See id. at 511. The Court also

recognized the Legislature intended to bar the recovery of minor

expenses, such as deductibles and copayments, as a trade-off for

lower premiums. See ibid. In our view, copayments and

deductibles are insufficiently analogous to the kind of expenses

at issue here. Haines seeks to recover $28,000 and Little

$10,488 in uncompensated medical expenses, hardly minor

expenses.

 Further, "[c]ompensated medical deductibles and co-payments

are fixed and capable of calculation at the time the insured is

issued the policy. It is the insured who determines what type

of premium he or she will pay by selecting an appropriate

deductible in exchange for a premium reduction." Bennett v.

Hand, 284 N.J. Super. 43, 45-46 (App. Div. 1995). "Unlike

deductibles and copayments, an accident victim can hardly be

expected to anticipate the severity of his or her injuries, and

the consequent expense of his or her medical care[,]" and "AICRA

is devoid of any legislative intent to have insureds bargain for

potentially bankrupting medical bills, in exchange for lower

premiums." Wise v. Marienski, 425 N.J. Super. 110, 124-25 (Law

Div. 2011).
 17
 A-5503-14T4
 We recognize the Roig Court observed if insureds choose one

of the deductibles provided in a PIP policy in exchange for a

lower premium and then sue to recover that deductible or the

copayment provided in their respective policies,

 [insureds] choosing the highest deductible
 would have the best deal: the lowest premium
 and the right to recover the excluded
 expenses in court against the tortfeasor.
 . . . [The named insured], like all New
 Jersey motorists, paid a lower annual
 insurance premium because of the mandatory
 PIP medical deductible and copayment. To
 allow a claim for the deductible and the
 copayment would be antithetical to the
 entire No-Fault statutory scheme. That kind
 of recovery could be available only if the
 Legislature reinstituted a fault-based
 system.

 [Roig, supra, 135 N.J. at 514.]

 However, as just discussed, copayments and deductibles are

different from other medical expenses and, after Roig, the

Legislature significantly broadened the definition of "economic

losses" to include uncompensated medical expenses. See N.J.S.A.

39:6A-2(k). In addition, having the right to recover a claim

against a tortfeasor for medical expenses not covered by PIP

does not result in a windfall to those who, in exchange for

reduced PIP benefits, paid a lower premium. As observed in

Wise:

 Plaintiffs are not having their cake and
 eating it, too. Their medical expenses are
 18
 A-5503-14T4
 not instantly recoverable. Instead, they
 must file suit, go through the discovery
 process, and run the gauntlet of proving
 defendant's liability, as well as the
 necessity and reasonableness of the medical
 bills, to a jury. That process typically
 takes years. Even if they are successful in
 this endeavor, they will still have to
 collect their damages, which could be
 impossible if a defendant is uninsured, or
 underinsured. So, while plaintiffs have
 been able to recoup a portion of their
 medical expenses fairly quickly, they must
 now labor without the assuredness of the no-
 fault system and proceed through the tort
 system to, hopefully, recover the remainder.
 Moreover, if the excess medical expenses are
 recovered, it is not a windfall to
 plaintiffs, because these expenses are owed
 to their medical providers.

 [Wise, supra, 425 N.J. Super. at 125.]

 In essence, those who purchase PIP benefits for less than

$250,000 in coverage get what they pay for. Although they pay

less for PIP premiums, they relinquish the significant

convenience of having substantial medical expenses paid without

regard to fault, obviating the need to litigate against a

tortfeasor, who ultimately may be judgment-proof.

 Defendants and amici cite D'Aloia v. Georges, 372 N.J.

Super. 246, 251 (App. Div. 2004), in support of their argument

that, because we declined to permit the insured in that matter

to recover uncompensated copayments and deductibles from the

tortfeasor despite the inclusion of uncompensated medical

 19
 A-5503-14T4
expenses in the definition of "economic losses", see N.J.S.A.

39:6A-2(k), we are similarly prohibited from permitting the

recovery of medical expenses above an insured's PIP limits.

 We reject this argument, as well. In D'Aloia we

recognized, as we do here, the Roig Court determined the

Legislature intended to prohibit lawsuits to recover PIP

deductibles and co-payments, even though at that time Section 12

permitted the recovery of uncompensated economic losses.

D'Aloia, supra, 372 N.J. Super. at 249. We also concluded the

Legislature intended to continue precluding the recovery of

copayments and deductibles from a tortfeasor despite expanding

the definition of "economic losses" to include uncompensated

medical expenses. Id. at 251. As we explained in D'Aloia:

 Reading sections 12 and section 2k in pari
 materia, State in the Interest of G.C., 179
 N.J. 475, 481-82 (2004), we conclude that
 section 2k makes clear that "economic loss,"
 which section 12 permits an accident victim
 to recover from the tortfeasor, includes
 uncompensated medical expenses. However,
 the AICRA amendments left unchanged the
 specific limitation in the first paragraph
 of section 12 which provides that the
 amounts of PIP deductibles and copayments
 are not admissible in automobile accident
 lawsuits. . . .

 In Roig, the Supreme Court invited the
 Legislature to amend the statute if it
 disagreed with the Court's holding. [Roig,
 supra,] 135 N.J. at 516. We would expect
 that, if the amendment to [N.J.S.A. 39:6A-
 20
 A-5503-14T4
 2(k)] were intended as the Legislative
 response to Roig, it would have specifically
 referenced PIP copayments and deductibles.
 We would also expect that section 12 would
 have been amended to eliminate the provision
 that makes those expenses inadmissible in
 evidence. The Legislature did not make
 either of those changes.

 In enacting AICRA, the Legislature also left
 intact a provision in N.J.S.A. 39:6A-
 4(e)(2), that prohibits an insurer or health
 provider from filing an action, under
 subrogation principles, to recoup "benefits
 paid pursuant to any deductible or copayment
 under this section." Similar language
 appears in N.J.S.A. 39:6A-4.3; AICRA did not
 modify that provision either. Thus, we
 conclude that the Legislature wanted to
 preclude both accident victims and their
 insurers from pursuing legal actions to
 recover PIP deductibles and copayments.

 [Id. at 250-51.]

 The fact the Legislature persisted in precluding a party

from recovering copayments and deductibles after expanding the

definition of "economic losses" in N.J.S.A. 39:6A-2(k) to

include uncompensated medical expenses does not reveal, as

defendants and amici suggest, an intention to bar accident

victims from recovering medical expenses that exceed his or her

PIP coverage limits.

 Finally, it cannot be overstated that "[o]ur task . . . is

to discern and give effect to the intent of the Legislature."

State v. O'Driscoll, 215 N.J. 461, 474 (2013). "Courts should

 21
 A-5503-14T4
be extremely reluctant to add terms to a statute, lest they

usurp the Legislature's authority." DiNapoli v. Bd. of Educ. of

Twp. of Verona, 434 N.J. Super. 233, 238 (App. Div.), certif.

denied, 217 N.J. 589 (2014).

 In summary, we hold Section 12 does not make inadmissible

medical expenses between the PIP limit in an insured’s standard

automobile insurance policy and $250,000, less deductibles,

copayments, or exclusions. Such expenses are a kind of

uncompensated economic loss that an injured party may seek to

recover against a tortfeasor. See N.J.S.A. 39:6A-12 and

N.J.S.A. 39:6A-2(k). Because evidence of plaintiffs' medical

expenses above those paid by their respective PIP policies are

not inadmissible, the two orders under review are reversed.

 We recognize an insured may incur medical expenses just

above his or her PIP limits that arguably might be minor.

Whether an insured is precluded from recovering such expenses

from a tortfeasor is a question we neither reach nor foreclose.

Here, however, it cannot be reasonably maintained plaintiffs'

uncompensated medical expenses are minor.

 We have considered defendants' and amici's remaining

arguments, including the contention that, if an insured selects

one of the four alternative options for PIP coverage, the amount

between the limit chosen and $250,000 is an exclusion and
 22
 A-5503-14T4
inadmissible. We conclude these remaining arguments are without

sufficient merit to warrant discussion in a written opinion. R.

2:11-3(e)(1)(E).

 Reversed.

 23
 A-5503-14T4