# RECORD IMPOUNDED

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0752-17T3

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

RICHARD W. BERNARDI, SR. and
STRATEGIC ENVIRONMENTAL
PARTNERS, LLC,

    Defendants-Respondents.

_____

<div style="border:1px solid black">

**APPROVED FOR PUBLICATION**

**August 28, 2018**

**APPELLATE DIVISION**

</div>

Argued April 16, 2018 – Decided August 28, 2018

Before Judges Messano, O'Connor and Vernoia.

On appeal from Superior Court of New Jersey, Law Division, Morris County, Indictment No. 16-02-0014.

Thomas R. Clark, Deputy Attorney General, argued the cause for appellant (Gurbir S. Grewal, Attorney General, attorney; Thomas R. Clark, of counsel and on the briefs).

John A. Azzarello argued the cause for respondents (Whipple Azzarello, LLC, attorneys; John A. Azzarello, of counsel on the briefs; William J. Munoz, on the briefs).

The opinion of the court was delivered by

VERNOIA, J.A.D.

By leave granted, the State appeals from an order dismissing the first four counts of a six-count indictment against defendants Strategic Environmental Partners, LLC (SEP) and its director and managing member, Richard W. Bernardi, Sr. Having considered the record and the parties' arguments in light of the applicable law, we reverse the court's dismissal of counts one, two and three, and affirm the dismissal of count four.

## I.

The record[1] before the motion court showed that in 2011 SEP purchased property in Roxbury from Sussex & Warren Holding Corp. (Sussex) that included a sanitary landfill, known as the Fenimore Landfill, which ceased operations thirty years earlier. The landfill has numerous environmental issues, has never been formally closed or declared environmentally safe by the New Jersey Department of Environmental Protection (NJDEP), and is in need of environmental remediation.

In as early as 2006, defendants had discussions with the NJDEP about a proposal to purchase and develop the property.

---

[1] Because we consider the State's appeal from the dismissal of four counts of the indictment, our statement of facts is based on the evidence presented to the grand jury, as described in the briefs and supported by the appendices of the parties. We have not been provided with transcripts of the grand jury proceedings.

A-0752-17T3

During 2010 and 2011, defendants proposed to the NJDEP a plan to remediate the site and place solar power generation equipment on it. During negotiations over the proposal, the NJDEP had concerns about defendants' financial ability to complete the required remediation.

The NJDEP twice requested that defendants provide a performance bond securing their performance of the proposed remediation, but defendants were unable to do so. In lieu of a performance bond, defendants agreed to deposit portions of "tipping fees" earned from its acceptance of materials at the landfill, and revenues from solar power generated at the site, into an escrow account from which the NJDEP would approve payments to third parties for the required remediation.

Defendants represented they would deposit $2,300,000 in the escrow account during 2011 through 2013 from a solar power developer. Defendants further represented they would provide the NJDEP with a signed contract from the developer within sixty days of the parties' entry into an Administrative Consent Order (ACO).

On October 6, 2011, defendants and the NJDEP entered into an ACO "to effectuate the necessary closure of the landfill." The ACO states the NJDEP agreed to its terms based on its analysis of the facts relevant to the landfill and "its review

of financial information presented by SEP."  The ACO expressly provides the NJDEP and defendants "AGREED" to its terms, including defendants' obligations to deposit funds in the escrow account.  The ACO also states that it "represents the complete and integrated agreement" of the NJDEP and defendants. Defendants and the NJDEP "warrant[ed] that they are authorized to sign [the] ACO and bind themselves . . . to comply with [the] terms and provisions of [the] ACO."  The ACO was executed by Bernardi and on behalf of SEP and the NJDEP.

The State alleges that following the execution of the ACO, Bernardi disclosed for the first time that SEP had outstanding debt in excess of $2,500,000 when the ACO was executed. Defendants' debts included an undisclosed $950,000 mortgage loan to Sussex that was executed eight months before the ACO.

Following execution of the ACO, Bernardi claimed SEP could not honor the ACO's escrow requirements because of defendants' obligations to their creditors.  By July 2013, defendants earned $5,500,000 in revenue from their operation of the landfill, but deposited no more than $250 into the escrow account.  The evidence presented to the grand jury showed $1,500,000 of the revenue was paid to Bernardi family members and one of their attorneys between 2013 and 2014.

The evidence before the grand jury also showed that following execution of the ACO, defendants' engineering firm requested that defendants be released from their obligation to provide a signed contract from a solar power developer. The letter revealed that defendants never had an agreement with a solar power developer, and the State alleged that defendants' representations prior to the ACO that they had an agreement with a solar power developer and would deposit $2,300,000 from the developer in the escrow account were false.

The evidence presented to the grand jury also showed that when defendants purchased the property in 2011, they represented they would construct a solar power generation facility on the property, thereby providing a source of revenue for payment of the $950,000 loan from Sussex that was secured by a mortgage. The evidence further showed defendants' presentation supporting the issuance of the loan and mortgage was false because defendants did not have a contract with a solar power provider, and did not yet have permission from Roxbury or the NJDEP to install solar power panels on the property. The State alleged defendants misrepresented that solar power generation revenues would provide the monies necessary to repay the loan amount secured by the mortgage.

Defendants were charged in an indictment with: second-degree false representations for a government contract, N.J.S.A. 2C:21-34(b) (count one); second-degree theft by deception from the NJDEP, N.J.S.A. 2C:20-4(a) (count two); first-degree financial facilitation of criminal activity, N.J.S.A. 2C:21-25(b)(2)(a) (count three); second-degree theft by deception from Sussex,[2] N.J.S.A. 2C:20-4(a) (count four); and second-degree theft of services, N.J.S.A. 2C:20-8(a) and N.J.S.A. 2C:20-2(b)(1)(a) (count five).[3] Bernardi was also charged with second-degree misconduct by a corporate official, N.J.S.A. 2C:21-9(c) and N.J.S.A. 2C:2-6 (count six).

Defendants moved to dismiss the indictment. Following argument, the court dismissed counts one through four.[4] In its oral decision, the court determined that count one, which

---

[2]  Count four alleges theft by deception from the "seller" of the property, which the record shows is Sussex & Warren Holding Corp.

[3]  Defendants were also charged in counts one through five pursuant to N.J.S.A. 2C:2-6 and N.J.S.A. 2C:2-7.

[4]  The court denied the motion to dismiss counts five and six, but ordered that count six "was restricted in scope based on the dismissal of counts one, two, three and four." Defendants did not cross-move for leave to appeal the court's denial of their motion to dismiss count five, and we therefore do not address the court's ruling on that count. Because we reverse the court's order dismissing counts one, two and three, we also reverse the court's order restricting the scope of the allegations in count six.

alleged defendants made false representations to the NJDEP in connection with the negotiation and entry into the ACO, could not be sustained as a matter of law because the ACO did not constitute a "government contract" within the meaning of N.J.S.A. 2C:21-34(b). Although the court found that "certainly the ACO is an agreement between the parties," and "has many features of events that lined up . . . in contracts," it reasoned that because N.J.S.A. 2C:21-34(b) provided for grading of the offense based on the contract amount, a "government contract" under the statute is limited to "a contract for a private person or corporation to provide goods or services to a government entity and to be paid for the same." The court found the ACO was not a contract requiring the NJDEP to pay defendants "in return for goods and services," and therefore defendants' alleged false misrepresentations in negotiating and entering into the ACO could not constitute a violation of N.J.S.A. 2C:21-34(b).

The court also dismissed count two, which alleged defendants committed a theft in violation of N.J.S.A. 2C:20-4(a) by using deception to obtain the ACO. The court determined the ACO did not have a value for purposes of grading the offense, and therefore it did "not fit" that the theft of the ACO could support the charged theft by deception offense.

The court dismissed count four, which alleged defendants committed theft by deception in their procurement of the $950,000 mortgage from Sussex. The court reasoned that count four charged theft of a mortgage, an instrument creating a lien, and theft of a lien on property defendants owned did not constitute theft of the property of another.

Last, the court dismissed count three, alleging financial facilitation of the criminal activity alleged in counts one and two. The court determined that because it dismissed counts one and two, there was no criminal activity supporting the financial facilitation alleged in count three.

We granted the State's motion for leave to appeal the court's dismissal of counts one through four. The State presents the following arguments for our consideration:

> POINT I
>
> THE ADMINISTRATIVE CONSENT ORDER WAS A GOVERNMENT CONTRACT THAT PROPERLY SERVED AS THE BASIS FOR PROSECUTION UNDER N.J.S.A. [2C:21-34(b)].
>
> A. THE TRIAL COURT CORRECTLY HELD THE ACO IS A CONTRACT.
>
> B. THE ACO SATISFIED THE TRIAL COURT'S CRAMPED CONSTRUCTION OF THE STATUTE.
>
> C. THE TRIAL COURT ERRED BY LIMITING THE TERM "GOVERNMENT CONTRACT" TO CONTRACTS OBLIGATING A GOVERNMENT ENTITY TO PAY A VENDOR.

1. Many Government Contracts Would Be Excluded By the Trial Court's Construction Limiting the Statute's Reach.

2. The Trial Court Erred in Trying to Divine the "Purpose and Thrust" of N.J.S.A. [2C:21-34(b)].

D. THERE IS NO BASIS TO APPLY THE RULE OF LENITY.

POINT II

THE ACO WAS A CONTRACT INVOLVING PROPERTY OF NJDEP THAT WAS OBTAINED BY DECEPTION.

POINT III

THEFT OF THE MORTGAGE BY DECEPTION WAS COMPLETE WHEN THE DEFENDANTS OBTAINED, BY DECEPTION, THE MORTGAGEE'S CONSENT TO MAKE THE MORTGAGE.

POINT IV

IF EITHER COUNT ONE OR COUNT TWO IS REINSTATED THEN COUNT THREE SHOULD BE REINSTATED.

II.

We review the "trial court's decision to dismiss [the counts of the] indictment de novo because it [does] not involve 'a challenge to fact-finding on the part of the trial court,'" State v. S.B., 230 N.J. 62, 67 (2017) (quoting State v. Cagno, 211 N.J. 488, 505 (2012)), but instead was based on the court's interpretation of the statutes pursuant to which defendant was charged. "Questions of statutory interpretation are legal ones" that we review "de novo, 'unconstrained by deference to the

decisions of the trial court . . . .'" <u>Ibid.</u> (quoting <u>State v. Grate</u>, 220 N.J. 317, 329 (2015)). A trial court's "interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." <u>State v. Pomianek</u>, 221 N.J. 66, 80 (2015). We apply these standards here.

<div align="center">A.</div>

Count one charges a violation of N.J.S.A. 2C:21-34(b), which provides:

> A person commits a crime if the person knowingly makes a material representation that is false in connection with the negotiation, award or performance of a government contract. If the contract amount is for $25,000.00 or above, the offender is guilty of a crime of the second degree. If the contract amount exceeds $2,500.00, but is less than $25,000.00, the offender is guilty of a crime of the third degree. If the contract amount is for $2,500.00 or less, the offender is guilty of a crime of the fourth degree.

Count one alleges defendants violated N.J.S.A. 2C:21:34(b) by knowingly making false representations concerning their financial condition and ability to generate revenue through solar power generation equipment in connection with the negotiation and award of the ACO.

The State contends the court erred by finding the ACO was not a "government contract" within the meaning of N.J.S.A.

<div align="center">10</div>

2C:21-34(b). The State argues the court correctly found the ACO was an enforceable agreement between defendants and the NJDEP, but erroneously concluded the ACO was not a "government contract" covered by N.J.S.A. 2C:21-34(b) because the ACO did not provide for the NJDEP's purchase of goods and services from a vendor. We agree and reverse the court's dismissal of count one.

In our consideration of the court's interpretation of N.J.S.A. 2C:21-34(b), we apply well-established principles of statutory construction. "The overriding goal of all statutory interpretation 'is to determine as best we can the intent of the Legislature, and to give effect to that intent.'" S.B., 230 N.J. at 67 (quoting State v. Robinson, 217 N.J. 594, 604 (2014)). "In most instances, the best indicator of that intent is the plain language chosen by the Legislature." State v. Gandhi, 201 N.J. 161, 176 (2010) (citation omitted); accord State v. Hudson, 209 N.J. 513, 529 (2012). We therefore are required to begin "with the language of the statute, and the words chosen by the Legislature should be accorded their ordinary and accustomed meaning." Hudson, 209 N.J. at 529.

"If the language leads to a clearly understood result, the judicial inquiry ends without any need to resort to extrinsic sources." Ibid.; accord S.B., 230 N.J. at 68 (quoting State v.

11

<u>Hupka</u>, 203 N.J. 222, 232 (2010)) ("If the Legislature's intent is clear on the face of the statute, then the 'interpretative process is over.'"). "When such [extrinsic] evidence is needed, we look to a variety of sources. Central among them is a statute's legislative history." <u>Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys.</u>, 192 N.J. 189, 196 (2007).

"When the Legislature sets out to define a specific term, 'the courts are bound by that definition.'" <u>S.B.</u>, 230 N.J. at 68 (quoting <u>Febbi v. Bd. of Review</u>, 35 N.J. 601, 606 (1961)). Otherwise, words in a statue must "be given their generally accepted meaning, according to the approved usage of the language." N.J.S.A. 1:1-1. "In determining the common meaning of words, it is appropriate to look to dictionary definitions." <u>Macysyn v. Hensler</u>, 329 N.J. Super. 476, 485 (App. Div. 2000).

The term "government contract" is not defined in N.J.S.A. 2C:21-34(b) or otherwise in the Code of Criminal Justice, N.J.S.A. 2C:1-1 to 104-9. In N.J.S.A. 2C:20-1, however, the Legislature defined the term "Government" for purposes of "chapters 20 and 21" of the Code, including N.J.S.A. 2C:21-34(b). "'Government' means the United States, any state, county, municipality, or other political unit, or any department, agency or subdivision of any of the foregoing, or any corporation or other association carrying out the functions

of government." N.J.S.A. 2C:20-1(d). We apply that statutory definition to our interpretation of the term "government" in N.J.S.A. 2C:21-34(b). See S.B., 230 N.J. at 68.

The NJDEP is an agency of the State of New Jersey, N.J.S.A. 13:1D-1; N.J. Tpk. Auth. v. Twp. of Monroe, 28 N.J. Tax 158, 163 (Tax 2014) ("The NJDEP is . . . [a] State agency") and thus falls within the definition of "Government" under N.J.S.A. 2C:20-1(d). Application of N.J.S.A. 2C:20-1(d)'s definition of "Government" to the term "government contract" in N.J.S.A. 2C:21-34(b), requires the conclusion that any "contract" covered by N.J.S.A. 2C:21-34(b) to which the NJDEP is a party is a "government contract" under N.J.S.A. 2C:21-34(b). See S.B., 230 N.J. at 68 (allowing statutory interpretation based on inferences drawn from a "statute's overall structure and composition"). Defendant does not contend otherwise. It is therefore necessary to determine if the ACO to which the NJDEP and defendants were a party is a "contract" under N.J.S.A. 2C:21-34(b).

"In determining the common meaning of words, it is appropriate to look to dictionary definitions." Macysyn, 329 N.J. Super. at 485. A contract has long been defined as "[a]n agreement between two or more parties creating obligations that are enforceable or otherwise recognizable at law" and a "writing

that sets forth such an agreement." Black's Law Dictionary 389 (10th ed. 2014); Black's Law Dictionary 318 (7th ed. 1999); see also Webster's II New College Dictionary 250 (3d ed. 2005) (defining contract as "[a] legally enforceable agreement between two or more parties," and "[t]he writing or document containing such an agreement").

By its express terms, the ACO provides that the parties agree to its terms and warrant that they "bind themselves . . . to comply with" its terms. The "ACO represents the complete and integrated agreement of, and shall be binding upon, and/or inure to the benefit of, the State of New Jersey, [and] the NJDEP[.]"

As the court correctly found, the ACO is an agreement between defendants and the NJDEP which, by its express terms, may be enforced by the parties. In other words, under the common meaning of the term, the ACO is a contract as a matter of fact. Further, it is a "government contract" under the plain language of N.J.S.A. 2C:21-34(b), because it is a contract between the NJDEP and defendants. See N.J. Dep't of Envtl. Prot. v. Bayshore Reg'l Sewerage Auth., 340 N.J. Super. 166, 172-73 (App. Div. 2001) (finding a party "bound itself contractually to the terms of" an ACO); E.I. Du Pont de Nemours & Co. v. State, Dep't of Envtl. Prot. & Energy, 283 N.J. Super. 331, 349-52 (App. Div. 1995) (affirming the NJDEP's authority to

enter into an ACO and observing that if a private party "chooses not to enter into such an agreement, it may do so").

The fact that the ACO also constitutes an order does not alter its status as an enforceable contract. Our Supreme Court has recognized that a consent judgment is "an agreement of the parties under the sanction of the court . . . ." Cmty. Realty Mgmt., Inc. v. Harris, 155 N.J. 212, 226 (1998) (citation omitted). The ACO is no different than a consent order in that it incorporates the contractual agreement of the parties and also constitutes an order, enforceable by both parties, requiring compliance with its terms. See ibid. The inclusion of the parties' agreement into a binding order does not render the ACO something other than a contract. To the contrary, the ACO constitutes a contract which includes an agreed-upon method to ensure compliance with its terms — enforcement of the order.

We are not persuaded by defendants' contention, which was accepted by the court, that a "government contract" under N.J.S.A. 2C:21-34(b), is limited to those providing for the procurement of goods and services from vendors. In the first instance, and for the reasons noted, the plain language of the statute does not permit or require such an interpretation. The Legislature chose to prohibit "knowingly mak[ing] a material representation that is false in connection with the negotiation,

award or performance of a government contract," N.J.S.A. 2C:21-34(b), but did not limit the statute's application to government procurement contracts or government contracts with vendors for the purchase of goods or services. We cannot add to a statute that which the Legislature opted not to include or require, see Haines v. Taft, 450 N.J. Super. 295, 309 (quoting DiNapoli v. Bd. of Educ. of Twp. of Verona, 434 N.J. Super. 233, 238 (App. Div. 2014)) ("Courts should be extremely reluctant to add terms to a statute, lest they usurp the Legislature's authority."), certif. granted, 231 N.J. 155 (2017), and there is nothing in the statute's plain language supporting the court's determination that N.J.S.A. 2C:21-34(b) applies only to government contracts for purchases of goods and services, see DiNapoli, 434 N.J. Super. at 238 (quoting O'Connell v. State, 171 N.J. 484, 488 (2002)) (finding courts shall not "rewrite a plainly-written enactment of the Legislature [or] presume that the Legislature intended something other than that expressed by way of the plain language").

Moreover, if the Legislature intended to limit the meaning of the term "contract" to agreements for the procurement of goods and services from a vendor, it would have defined the term contract in the same manner it chose to define various other terms found in chapters 20 and 21 of the Code. See N.J.S.A.

2C:20-1. But the Legislature chose not to define the term contract, and is fully aware that where the definition of a statutory term is not provided, we are required to apply the term's ordinary meaning. See N.J.S.A. 1:1-1; see also Berg v. Christie, 225 N.J. 245, 284 (2016) (alteration in original) (quoting Mahwah Twp. v. Bergen Cty. Bd. of Taxation, 98 N.J. 268, 279 (1985)) ("The Legislature is presumed to have been aware of existing legislation[.]"). The ordinary meaning of the term "contract" is not limited to agreements to purchase goods and services from vendors.

N.J.S.A. 2C:21-34(b) was enacted as part of legislation modifying contracting requirements under the Local Public Contracts Law, N.J.S.A. 40A:11-1 to -51, L. 1999, c. 1 to 43, the Public Schools Contracts Law, N.J.S.A. 18A:18A-1 to -59, L. 1999, c. 44 to 82, "and the laws governing State procurement."[5] See Sponsor's Statement to Assembly No. 3519 104 (Nov. 15,

_____

[5] The legislation, L. 1999, c. 1 to 107, made revisions to contracting requirements and procedures of the Local Public Contracts Law, N.J.S.A. 40A:11-1 to -51, L. 1999, c. 1 to 43, the Public Schools Contracts Law, N.J.S.A. 18A:18A-1 to -59, L. 1999, c. 44 to 82, the New Jersey Sports and Exposition Authority Law, N.J.S.A. 5:10-1 to -38, L. 1999, c. 83, the Hackensack Meadowlands Reclamation and Development Act, N.J.S.A. 13:17-1 to -86, L. 1999, c. 84, the New Jersey Highway Authority Act, N.J.S.A. 27:12B-1 to -35 (2000), L. 1999, c. 85 to 87, and the New Jersey Water Supply Authority Act, N.J.S.A. 58:1B-1 to -25, L. 1999, c. 88, and by the New Jersey Division of Purchase and Property, N.J.S.A. 52:27B-53 to -68.2, L. 1999, c. 89 to 96.

1999).  The legislation addressed contracting standards and procedures in varying contexts for different governmental entities, but did not include a definition of the term "contract" applicable to all of its provisions.  Cf. N.J.S.A. 2C:20-1 (providing definitions for the use of various terms under chapters 20 and 21 of Code).

For example, the Legislature adopted the same definition of the term "contract" for use under the Local Public Contracts Law, N.J.S.A. 40A:11-2(21), L. 1999, c. 6, and the Public Schools Contracts Law, N.J.S.A. 18A:18A-2(n), L. 1999, c. 50:

> "Contract" means any agreement, including but not limited to a purchase order or a formal agreement, which is a legally binding relationship enforceable by law, between a vendor who agrees to provide or perform goods or services and a [contracting unit or board of education] which agrees to compensate a vendor, as defined by and subject to the terms and conditions of the agreement. A contract also may include an arrangement whereby a vendor compensates a [contracting unit or board of education] for the vendor's right to perform a service, such as, but not limited to, operating a concession.

The Legislature, however, did not similarly adopt a definition of the term "contract" for application to the other governmental entities that were the subject of the legislation.  Thus, the Legislature demonstrated it would expressly provide a definition of the term where it intended for it to apply, and otherwise

relied upon the ordinary usage of the term under N.J.S.A. 1:1-1, where reliance on a specific definition was not intended. See State v. Lenihan, 427 N.J. Super. 499, 510 (App. Div. 2012) (finding the Legislature provides definitions when it intends application of a particular definition of a term).

The Legislature did not define the term "contract" in N.J.S.A. 2C:21-34(b). Although the Legislature adopted specific definitions of the term elsewhere in the statue, it elected not to provide a definition of the term in N.J.S.A. 2C:21-34(b). If the Legislature intended to limit the meaning of the term contract in N.J.S.A. 2C:21-34(b) to only procurement contracts for the sale of goods and services to vendors, it would have done so as it did under the Local Public Contracts Law and Public Schools Contracts Law. "When the Legislature expressly includes a requirement in one section and excludes that same requirement in other subsections of the same general statute, we need not strain to import that requirement where it is not." In re Freshwater Wetlands Prot. Act Rules, 180 N.J. 478, 492 (2004). We therefore conclude the Legislature did not intend to incorporate into N.J.S.A. 2C:21-34(b) the definition of contract it expressly adopted for the Local Public Contracts Law and Public Schools Contracts Law, or apply any meaning to the term contract other than that of its ordinary usage. See N.J.S.A.

1:1-1. When we apply the ordinary usage of the term, we are satisfied the ACO is a government contract under N.J.S.A. 2C:21-34(b).

We also reject the contention and court's conclusion that the contracts covered by N.J.S.A. 2C:21-34 must be procurement contracts for goods and services from a vendor because the grading of the offense under the statute is dependent upon the "contract amount." Although not a typical procurement contract where a direct purchase of goods and services is made by a governmental entity, it is error to conclude the ACO did not include a contract amount. Under the terms of the ACO, defendants agreed to remediate the Fenimore Landfill in exchange for NJDEP approvals and permission for defendants to operate and generate revenue at the site. In addition, the ACO included a contract amount — the millions of dollars defendants agreed to deposit in an escrow account to be used for the required remediation of the property. To suggest or conclude otherwise is to ignore the contractual arrangement set forth in the ACO. Thus, the ACO included a contract amount, and N.J.S.A. 2C:21-34(b)'s grading provisions are not inconsistent with the conclusion that the ACO is a "government contract" under the statute. The court erred in finding otherwise.

We reverse the dismissal of count one. We also reverse the dismissal of count three because its dismissal was based in part on the dismissal of count one.

<p style="text-align:center">B.</p>

We next consider the State's challenge to the court's dismissal of count two, which charged second-degree theft by deception, N.J.S.A. 2C:20-4(a). The indictment alleges defendants committed a theft of the contract, the ACO, by deceiving the NJDEP as to SEP's financial condition and ability to generate revenue through solar power generation. The court dismissed count two, finding that theft of a contract was inconsistent with the grading of theft offenses and therefore a charge of theft of the ACO by deception "does not fit."

Defendants are charged in count two under N.J.S.A. 2C:20-4(a), which provides

> A person is guilty of theft if he purposely obtains property of another by deception. A person deceives if he purposely:
>
> a. Creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind . . . but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise;

"A person cannot be convicted of theft by deception unless he has obtained the property of another by purposely creating a

false impression." State v. Diorio, 216 N.J. 598, 619 (2014). In pertinent part, "[p]roperty" is defined as "anything of value, including . . . contract rights . . . ." N.J.S.A. 2C:20-1(g). The "'[p]roperty of another' includes property in which any person other than the actor has an interest which the actor is not privileged to infringe . . . ." N.J.S.A. 2C:20-1(h). "Obtain" means "in relation to property, to bring about a transfer or purported transfer of a legal interest in the property, whether to the obtainer or another . . . ." N.J.S.A. 2C:20-1(f)(1).

Applying these definitions, to establish a violation of N.J.S.A. 2C:20-4(a) based on the theft of the ACO alleged in count one, the State was required to show that the NJDEP had a "legal interest" in contract rights that it transferred to defendants in the ACO, N.J.S.A. 2C:20-1(h), and that the contract rights had value, N.J.S.A. 2C:20-1(g). "[T]he [NJ]DEP's general enabling statute, N.J.S.A. 13:1D-1 to -137, grants the agency vast authority to set policy and promulgate regulations 'for the conservation of the natural resources of the State, the promotion of environmental protection and the prevention of pollution of the environment of the State.'" In re Adoption of N.J.A.C. 7:15-5.24(b) & N.J.A.C. 7:15-5.25(e), 420 N.J. Super. 552, 572 (App. Div. 2011) (quoting N.J.S.A.

A-0752-17T3

13:1D-9). To achieve those purposes, the NJDEP is vested with the authority to "[c]ontract with any other public agency or corporation incorporated under the laws of this or any other state for the performance of any function" authorized by the NJDEP's enabling statute. N.J.S.A. 13:1D-9(q). Thus, the NJDEP has a direct and exclusive interest, as vested by its enabling statute, in granting contract rights necessary to achieve its purpose of conserving natural resources, promoting environmental protection and preventing environmental pollution.

In the ACO, defendants obtained contract rights in which the NJDEP had an interest as the State agency vested with the responsibility to direct the State's environmental policies, in which defendants were "not privileged to infringe." See N.J.S.A. 2C:20-1(h) (defining "[p]roperty of another"). The contract rights were also of value because they permitted defendants to operate the landfill, accept solid waste and collect tipping fees, and develop a solar power generation operation. See N.J.S.A. 2C:20-1(g) (defining "[p]roperty" under Titles 20 and 21 as "anything of value"). The ACO granted defendants the contract right to collect the agreed upon millions of dollars in tipping fees which, as shown by the evidence presented to the grand jury, were stolen by defendants. The evidence further showed the NJDEP granted the contract

A-0752-17T3

rights in the ACO based on defendants' deceptions. See Diorio, 216 N.J. at 619; N.J.S.A. 2C:20-4(a); see also State v. Krueger, 241 N.J. Super. 244, 249 (App. Div. 1990) (quoting State v. Talley, 184 N.J. Super. 167, 169 (App. Div. 1982), rev'd on other grounds, 94 N.J. 385, 388 (1983)) ("Theft by deception 'occurs where one obtains the property of another by purposely creating a false impression.'").

We are therefore convinced the court erred by dismissing count two. The evidence showed defendants obtained the NJDEP's property by deception in violation of N.J.S.A. 2C:20-4(a) because it transferred something of value, contract rights over which the NJDEP had an interest, in response to defendants' false statements about their financial condition and alleged contract with a solar power developer. See N.J.S.A. 2C:20-1(f), (g) and (h); see also N.J.S.A. 2C:20-4(a). We also reverse the dismissal of count three to the extent it alleges financial facilitation based on the criminal activity alleged in count two.

We affirm the court's dismissal of count four which charged defendants with theft by deception in violation of N.J.S.A. 2C:20-4(a) by obtaining a $950,000 mortgage from Sussex in connection with SEP's purchase of the property. The State claims defendants obtained the mortgage based on their

misrepresentations concerning their ability to generate revenue from the generation of solar power on the property.

The indictment, and the State's argument, misconstrue the nature of the mortgage and its obligations. Defendants did not "obtain" a mortgage from Sussex, and the mortgage was not executed on Sussex's behalf. Instead, SEP, as the mortgagor, granted the mortgage to Sussex, and Sussex obtained a lien on the property as a result. "[A] mortgage is simply a form of 'security for the payment of a debt' . . . ." Brunswick Bank & Tr. v. Affiliated Bldg. Corp., 440 N.J. Super. 118, 125 (App. Div. 2015) (quoting J.W. Pierson Co. v. Freeman, 113 N.J. Eq. 268, 271 (E. & A. 1933)). The mortgage, which count four alleges defendants obtained by deception, did not transfer any property to defendants in which Sussex had an interest.[6] See Diorio, 216 N.J. at 619 (explaining theft by deception is committed when a person purposely obtains the property of another by creating a false impression); see also N.J.S.A. 2C:20-4(a). Therefore, there was insufficient evidence

---

[6] The indictment does not allege that defendants obtained a loan based on their alleged misrepresentations. See State v. Rodgers, 230 N.J. Super. 593, 601 (App. Div. 1989) (finding the defendant committed theft by deception in violation of N.J.S.A. 2C:20-4(a) by obtaining a loan based on misrepresentations and false documents).

supporting the theft by deception offense under N.J.S.A. 2C:20-4(a) charged in count four.[7]

Reversed as to the dismissal of counts one, two and three.[8] Affirmed as to the dismissal of count four. Remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[7] We reject the State's contention that this court should direct the trial court to amend count four "to add any necessary clarification." The State did not seek leave to amend the indictment before the motion court, count four is deficient as a matter of law and it is not this court's role to provide the State refuge from a defective indictment.

[8] As noted in footnote 4, supra, our reversal of the court's dismissal of counts one, two and three also requires reversal of the court's order restricting the scope of the allegations in count six. The scope of the allegations in count six shall include the conduct alleged in counts one, two and three.